[No. 2,396.]

DAVID H. BURKE, EXECUTOR, AND ADELE B. WOLFE, EXECUTRIX OF THE WILL OF UDOLPHO WOLFE, DECEASED, *v.* FRANCIS CASSIN AND P. J. CASSIN; SAME *v.* S. WERTHEIMBER AND L. WATERMAN.

TRADEMARK.—A trademark is a word or device adopted or devised and used by the manufacturer or vender of goods, to designate the origin or ownership of his goods.

WHAT CANNOT BE APPROPRIATED AS A TRADEMARK.—A word, figure, etc., in common use, which indicates the name, nature, kind, quality, or character of the article, cannot be appropriated as a trademark.

IDEM.—The word "Schnapps," which has long been in use to designate gin manufactured at Scheidam, cannot be appropriated as a trademark for gin, in the United States, even if its former use had been confined to Europe.

IDEM.—The word "Scheidam" cannot be adopted as a trademark, because it has long been used to denote quality or kind.

IDEM.—The word "aromatic," when employed to express one of the qualities of liquor, cannot be protected as a trademark.

PIRACY OF A TRADEMARK.—The name of the manufacturer or seller of goods may be used as a trademark, and the adoption of the same name, as a trademark for goods of the same kind, by a person of a different name, is "piracy of a trademark."

IDEM.— A slight change in the name, such as cutting off the final letter, or prefixing "Von" or "Van" to it, so long as it is an evident imitation, does not prevent its use from being piracy of the trademark.

LABEL ON GOODS.—A label, at common law, is not a trademark, but when a manufacturer or seller of goods adopts a label to distinguish his goods from those of another, he is entitled to be protected in its use, and others will be enjoined from using the same, or a colorable imitation thereof.

IMITATION OF LABEL.—An imitation of a label used on goods, is such a colorable representation thereof as is calculated to produce in the mind of the purchaser of goods the impression that they were manufactured or sold by the person whose label has been imitated.

APPEAL from the District Court of the Fifteenth Judicial District, City and County of San Francisco.

Udolpho Wolfe brought these suits in his lifetime to restrain the defendants from using his trademark, and for damages. A preliminary injunction was granted on the complaint when the suit was commenced. The defendants answered, and moved, on the answer and affidavits, for a dissolution of the injunction. The motion was granted, and the plaintiffs appealed from the order.

The following are the labels of the parties, Exhibit "B" being the plaintiff's label, and Exhibits "C" and "D" being the labels of the defendants:

[EXHIBIT "B."]

WOLFE'S
AROMATIC
S C H I E D A M
S C H N A P P S.
*A Superlative*
*Tonic, Diuretic, Anti-Dyspeptic*
and
INVIGORATING CORDIAL.

This *Medicinal Beverage* is manufactured by the Proprietor at Schiedam, in Holland, and is warranted not only pure from every injurious property and ingredient, but of the best possible quality. Its extraordinary medicinal properties in Gravel, Gout, Chronic Rheumatism, Incipient Dropsy, Flatulence, Colic, Pains of Stomach and Bowels, whether in adults or infants.

In all ordinary cases of obstruction in the Kidneys, Bladder, and Urinary Organs, &c.

[EXHIBIT "C."]

VAN WOLF'S
AROMATIC
S C H I E D A M
S C H N A P P S.
*A Superior*
*Tonic, Anti-Dyspeptic,*
and
INVIGORATING CORDIAL.

This *Wholesome Beverage* is manufactured by the Proprietor at Schiedam, and is warranted pure from every injurious property and ingredient, and of the best possible quality.

Its undoubted efficacy in Gravel, Gout, Chronic Rheumatism, Incipient Dropsy, Flatulence, Colic, Pains of the Stomach and Bowels, whether in adults or infants.

In all ordinary cases of obstruction in the Kidneys, Bladder, and Urinary Organs, &c.

[EXHIBIT "D."]

VON WOLF'S
Celebrated
AROMATIC
S C H I E D A M
S C H N A P P S.
*A Superior*
*Tonic, Anti-Dyspeptic,*
and
INVIGORATING CORDIAL.

This *Medicinal Beverage* is manufactured by the Proprietor at Schiedam, and is warranted pure from any injurious property and ingredient, and of the best possible quality.

Its Medicinal Efficacy in Gravel, Gout, Chronic Rheumatism, Incipient Dropsy, Flatulency, Colic, Pains of the Stomach and Bowels, whether in adults or infants.

In all ordinary cases of obstruction in the Kidneys, Bladder, and Urinary Organs, &c.

*Cowles & Drown,* for Appellants.

"It was at one time thought that no man could acquire a right to a particular trademark (*Blanchard* v. *Hill,* 2 Atk. 284); but as the true interest of manufacturers and commerce were more fully developed and appreciated, the right of property in trademarks was recognized; and the doctrine has been uniform for many years, that the manufacturer or merchant does possess an exclusive property in the trademark adopted and used by him." (*Derringer* v. *Plate,* 29 Cal. 295; Upton on Trademarks, 10, 13.)

This property he acquires by the prior adoption of a name, or marks, which will identify his article and distinguish it from others. (2 Hilliard on Torts, 623.)

It is not necessary that we should, and we do not claim that Wolfe invented, as a new creation, any of the words constituting the name of his article. We may admit that all the words of which it is composed existed somewhere at the time he adopted this designation, and even before; but we do claim—and have established it by proof—that he was the first to combine these words into the name "Wolfe's Aromatic Schiedam Schnapps," and the first to apply that name, or any part of it, as the distinguishing appellation of an article of trade.

The name so adopted by Wolfe, possesses the requisite identifying and distinguishing qualities for a trademark. "The sole purpose being that the marks adopted shall be such as will identify the thing named as that of the person naming it, and distinguish it from all others. This purpose is accomplished if the name be not then in like use, or had not been within a period so recent as would be likely to defeat the primary purpose of distinctive designation." (Upton on Trademarks, p. 47.)

In the exclusive use of such a name and such marks so adopted, plaintiff is entitled to receive fullest protection from a Court of equity; and this upon the two grounds which form the basis of all legal interference in trademark cases:

First—Security to the merchant and manufacturer of the rewards of his skill and enterprise; and,

Second—Protection to the public from imposition and fraud.

A man's trademark, as we have seen, is his property, absolutely and completely. It is also to his goods, what his signature or indorsement is to his bond or note. It lends them credit, and determines their rate in the market. Like the die at the mint, its impress guarantees genuineness and makes current the wares that bear it. (*Motley* v. *Downman*, 3 M. & C. 13.)

The labels display the same inverted zeal, to avoid confusion of their preparation with the plaintiff's by the trade and the public. To their care in selecting a name for it, which, with the exception of an obscure prefix, is identical with plaintiff's in every particular, they add an equal diligence in surrounding it with every sign and device used by Wolfe that would be likely to associate the two articles in the mind of the buyer.

The doctrine of trademarks is of but comparatively recent birth. The first announcement of it appears in an unassuming duodecimo called Latch's Cases, p. 188 (Hil. T., 2 Car.), *Dean* v. *Steel;* and its brevity is in keeping with the book that contains it.

"24 Eliz. Sandford makes such good cloth (he being an eminent clothier) that every one will give more for the cloth that has his mark than any other. Another man made bad cloth, and put Sandford's mark to it, wherefore he sued him and recovered."

*Blanchard* v. *Hill,* 2 Atk. 484 (1742), seems to have been the first application to a Court of equity for relief in this direction; but during the century and a quarter that has passed since the date of that case, trade and manufactures—in whose interests alone trademarks are protected—have taken wondrous strides; and the very fact that no Court of equity at the present day, either in England or America, would hesitate to grant an injunction where Lord Hardwicke denied one, shows how intimately the development of this branch of the law is associated with the growth of the manufacturing and commercial interests of mankind.

Plaintiff has an exclusive right to the use of the name "Wolfe's," as against every other person—except, perhaps, another of the same name in good faith giving that name to an article manufactured or sold by himself—and as against every colorable imitation of it. (*Williams* v. *Johnson,* 2 Bosw. p. 1.)

Even another person bearing the same name, if he sought to apply it to an article of like nature, would be compelled to abstain from accompanying it with any circumstances calculated to mislead the public or effect a fraud. (*Sykes* v. *Sykes*, 2 Barn. & Cress. 541; *Albord* v. *Bailey*, 49 Barb. 588.)

As to the designation "aromatic," although standing by itself, plaintiff might not be permitted to claim in it an exclusive proprietorship, because it is the common property of every one speaking the English language; yet, having been the first to place it in the combination in which it here appears, and having also been the first to apply it to a liquor, he is entitled to claim that such use and application shall be preserved to him inviolate—certainly that it shall not be used or applied in connection with a like arrangement, or surrounded with similar devices to those which his ingenuity has originated. (*Knott* v. *Morgan*, 2 Keen's Rep. 213.)

Schiedam, it is true, is the name of a town in Holland. But Wolfe manufactures at that town, and its name, when applied to his article, indicates its origin. Under all the authorities he is entitled to be protected in such a use of such a word. Beyond question is this the case as between him and every person not manufacturing at Schiedam. (*Brooklyn White Lead Co.* v. *Measury*, 25 Barb. 417; *Newman* v. *Alvord & Bailey*, 49 Barb. 588.)

But plaintiff's name cannot be assailed thus in detachments, nor is it necessary for him to justify, as he has done, the use of each particular portion of it. He is entitled to the exclusive use of it as an entirety—"Wolfe's Aromatic Schiedam Schnapps;" the infringement is upon the whole name, and the protection must go to the whole in order to be adequate and complete. (*Barrows* v. *Knight*, 6 R. I. 438; *Matsell* v. *Flanagan*, 2 Abb. Pr., N. S., 460; *Groft* v. *Day*, 7 Beav.; *Hogg* v. *Kirby*, 8 Ves. 214; *Knott* v. *Morgan*, 2

Keen, 219; *Crawshay* v. *Thompson*, 4 Man. & G. 357; *Brooklyn White Lead Co.* v. *Measury*, 25 Barb. 416; *Lemoine* v. *Gauton*, 2 E. D. Smith, 343; *Amoskeag Mf'g Co.* v. *Spear*, 2 Sandf. 599; *Corwin* v. *Daly*, 7 Bosw. 222; *Partridge* v. *Menck*, 2 Sandf. 622; *Coats* v. *Holbrook*, 2 Sandf. 586; *Williams* v. *Johnson*, 2 Bosw. 1.)

*Pringle & Pringle*, for Respondents.

The law of trademarks is no longer uncertain. It has taken a definite and logical shape, generalized from a great mass of decisions in which for more than a century we note a contest between two antagonistic principles tending to opposite extremes—the one to encourage monopoly under the form of protection to property in names and symbols, and the other to open the door to imitation under the excuse of free competition. When property in a name was first recognized, the natural tendency was to an abuse of the doctrine, and property in any name or device was claimed to be admissible. But with the expansion of trade and the multiplication of modern wants, the necessity of free competition made itself felt, and it was soon manifest that the true rule must be that which gives just so much security to property as is consistent with fair and honest competition in trade. Thus it became apparent that the sole object to be attained was to prevent one person from selling or passing off his goods as and for the identical goods of another. And hence was evolved the rule that a person may claim as his trademark and exclusive property, any name indicating the origin or ownership of his article.

A manufacturer may call his article the "Roger Williams" long cloth, for though he is not himself Roger Williams, yet the name is one adapted to represent only individuality or identity of article, its origin, or ownership—not in any way its character or quality. But he may not call his long cloth "A No. 1," or "superfine;" as a druggist may not call his

lotion Medicated Balm or Mexican Medicated Balm, for the manifest reason that many long cloths may be "A No. 1," or "superfine," and all the world has a right to make such, and many lotions may be medicated or Mexican, and all the world has a right to compound such.

In accordance with this rule, the words in which property may be claimed are either those which directly indicate origin or ownership as proper names of the owner, or those which, being wrested from their ordinary sense, are applied in an arbitrary or fanciful manner, so as to preclude the possibility of the word then meaning anything except the particular thing to which it is thus fancifully applied.

Some of the names to which, in accordance with the above rule, protection is afforded, are the following: Revere House, Bismark Collar, Roger Williams Long Cloth, Charter Oak Stove, What Cheer House. Names to which protection is denied, as too broad in their natural signification to be appropriated by one person or article, are the following, viz: Cologne Water, Venetian Blinds, Naples Biscuit, London Brown Stout, XXX Ale, Genuine Yankee Soap, Balm of Thousand Flowers, Club House Gin, Old London Gin, Medicated Mexican Balm, Chinese Liniment, Chartres Coffee, Antiquarian Book Store.

Such is the law of trademarks, as recognized by this Court. It is quite useless to refer to authorities in support of it. The leading cases are collected in Upton, and reviewed.

Let us now apply the law to the present case.

The respondents contend that the appellant has attempted to appropriate to his exclusive use words which do not indicate the origin or ownership of his particular article, but are words in common use in the same sense in which he has employed them.

The respondents also insist that they have never attempted to pass off their goods as and for the goods of the appellant.

That their aim has been opposition in trade—not imitation. The debatable words are "Aromatic Schiedam Schnapps." Certainly we need not pause over "aromatic." It is unreasonable in Mr. Wolfe to ask to appropriate a word so useful as "aromatic," especially when applied to liquors. What Sybarite has not, even from the time of Lucullus, as he quaffed his Falernian, Lachryma Christi, or Johanisberger, raved about its delicate aroma! Verily we cannot "give up to Wolfe what was meant for mankind." Nor need we linger over the word "Schiedam," which is the name of a town in Holland. The appellant cannot claim to have introduced " Schiedam " to the world, or to be entitled to the sole use of it. For the word "schnapps" there is scarcely any more ground for contest. It is conceded to be a word originally from the German, signifying a dram or drink, which, at least since the beginning of this century, had the same meaning in Holland, and in that country is said by the appellant to be written "Snaps." The appellant, as the only possible means of sustaining himself, claims that until he used the word to designate his article it never had been used to designate any particular article of commerce. Even if this were so it would not help him. For if the word had not been used in the same sense in which he used it, it certainly was in common use in a sense including that in which he uses it. (*Udolpho Wolfe* v. *Emile Goulard*, 18 How. Pr. R. 64.)

If we have successfully established that the appellant has no proprietary right to the words "Schiedam Schnapps," as he certainly has not to the words "celebrated" and "aromatic," is he entitled to any relief in this action? His counsel contend that even if he cannot appropriate the separate words, he is entitled to the exclusive use of the term " Wolfe's Aromatic Schiedam Schnapps " as an entirety. Here they are directly in conflict with *Falkinberg* v. *Lucy*. If single words cannot be appropriated, their

combination cannot be. If we may use aromatic, and Schiedam, and schnapps, we may use them in combination, and certainly we must use them in their natural order and combination.

The respondents insist that they have not carried resemblance or imitation any further than is proper for competition. The name of the appellant, of course, he is entitled to keep inviolate, and in that the respondents have left him undisturbed right of property. They call their article " Van Wolf's" and " Von Wolf's," for contrast rather than for resemblance. They desire to challenge comparison with " Wolfe," and at the same time to mark a difference. A resemblance and a difference are frequent elements of competition. These names were apparently chosen to point the resemblance and preserve the difference. They serve to raise the flag of opposition. Like the shoemaker who, when his rival adopted the Latin motto, " *Mens conscia recti,*" triumphantly met him with the improvement, " Men's and women's conscia recti."


By the Court, Rhodes, J.:

From the year 1848 to the time of the commencement of these actions, Udolpho Wolfe, the plaintiff's testator, who has died since the commencement of these actions, has been engaged in the manufacture of gin at Schiedam, in Holland, and in the importation of it into New York, and in the sale of it in different places in the United States. The gin is put up in bottles having labels attached, and the bottles are inclosed in wrappers, also having labels thereon, and are packed in boxes, upon which are stamped certain words which appear on the labels. Wolfe claims as his trademark, the words: " Wolfe's Aromatic Schiedam Schnapps." The defendants are engaged in manufacturing or compounding and offering for sale, at San Francisco, gin, or an article

which resembles gin, but which is inferior in quality to that which is sold by the plaintiff; and the labels and stamps which they place on their bottles and the wrappers and boxes, bear a striking resemblance to those which are used by the plaintiff. The labels used by the defendants in one of the actions, represent the commodity to which it is attached as " Von Wolf's Aromatic Schiedam Schnapps;" and those which are used by the defendants in the other. action, represent it as " Van Wolf's Aromatic Schiedam Schnapps." The plaintiff claims that the use of those words, stamps and labels, by the defendants, is a violation of his trademark.

A trademark is a word, symbol, figure, form, or device, or a combination thereof, adopted or devised and used by a manufacturer or vender of goods, to designate the origin or ownership of his goods, and is used by him to distinguish his goods from those which are manufactured or sold by others. A violation of a trademark consists in the adoption or colorable imitation thereof, and its use by the wrongdoer on his goods in such manner that the purchasers of the goods of the wrongdoer are deceived, or liable to be deceived, and induced to believe that such goods were manufactured or sold by the owner of the trademark. In its essence, it is a false representation in respect to the origin or ownership of the goods, to which the false or simulated trademark is attached. There is but little conflict among the cases in regard to the rules of law governing the acquisition or enjoyment of the right of a trademark, or those applicable to controversies growing out of the violation of those rights; but the principal difficulties arise in the application of those rules to the varied and sometimes complicated facts of the several cases. One of those rules is that a word, figure, etc., in common use, which indicates the name, nature, kind, quality, or character of the article, cannot be appropriated as a trademark; and even a new word which is devised for a

new preparation, compound, or article, will not be protected as a trademark, as is held by many well considered cases; but there are others which lay down the contrary doctrine.

The name which the plaintiff employs to designate the article which he sells, is "Schiedam Schnapps," or "Schnapps." The affidavits used on the hearing of the motion to dissolve the injunction, tend to show that the word Schnapps was in common use in Holland, and to some extent in the United States, at the time of its adoption by the plaintiff. Its primary signification probably was "dram," or "drink," but it had long been used to designate gin manufactured at Schiedam. That word, therefore, could not be appropriated by the plaintiff as his trademark. Had it not been used in New York, or elsewhere in the United States, as the name of gin, prior to its adoption by the plaintiff, he still could not maintain his claim to it. Could he secure his claim to the word on the ground that it was not in use in the United States, prior to the time when he adopted it, the law for the protection of trademarks would be shorn of most of its strength, for on the same principle other persons would be at liberty to adopt and use the word in other cities, States, or countries, if at the time of its adoption by them it was not in use in such cities, States, or countries. The rule for the exclusion of a word in common use, is coextensive with that for the protection of a word which was rightfully adopted as a trademark.

Nor can the word "Schiedam" be adopted as a part of the plaintiff's trademark. It is claimed as indicating origin—the place of manufacture of the plaintiff's gin; but the evidence shows that there are other manufactories of gin at that city besides that of the plaintiff, and the word has long been used to denote quality or kind. A party would not be entitled to be protected in the use of the word "Havana" as a trademark for his cigars, even as against a party whose cigars were neither manufactured or sold at

Havana, for that word is used as descriptive of the kind or quality of the cigars.

The word "aromatic" is employed as expressive of one of the qualities of the plaintiff's liquor, and therefore cannot be claimed as a trademark.

The name of the manufacturer or seller of goods may, of course, be used as a trademark; and the adoption of the same name as a trademark for goods of the same kind, by a person bearing a different name, is without justification or excuse, and presents one of the clearest cases of piracy of a trademark. The name of the plaintiff is "Wolfe," and the name, as printed in the defendants' labels, is "Wolf," and has the prefix "Van" or "Von." The latter, as we understand the affidavits, are mere prefixes, and have no greater significance than would the abbreviation "Mr." in the same position. The omission of the final letter of the plaintiff's name, does not work a material change of the name. A slight change in the name, is an artifice often resorted to by those who offer in the markets their goods, as the goods manufactured or sold by another; but the cases show that it meets with no favor from the Courts. We are clearly of the opinion that "Van Wolf" or "Von Wolf" are but imitations of the plaintiff's name, and are violations of his trademark.

It will readily be seen upon a comparison of the labels of the plaintiff with those of the defendants, that they are in many respects different, but in other respects there is a marked resemblance. The similarity could not have been accidental. The design on the part of the defendants to imitate the plaintiff's labels is unmistakable. The labels are of nearly the same dimensions, the paper and ink are respectively of the same colors. The prominent words in each are those already mentioned in discussing the questions in respect to the trademark—"Aromatic Schiedam Schnapps"—and the general appearance of the defendants'

labels is such, that a large majority of persons would be liable to mistake them for the plaintiff's labels.

In *Falkinburg* v. *Lucy*, 35 Cal. 52, it is said that a label is not entitled to protection as a trademark; and on the authority of that case, as we understand the plaintiff's counsel, the preliminary injunction in each of these cases was dissolved. A label is not a trademark, as recognized at common law, though it may in fact contain no words, figures, etc., except those which constitute the trademark. A person may adopt a label of given materials, size, color, etc., and may attach the same to his goods, or the wrappers, cases, etc., in which they are packed, although another person has previously adopted a label of the same materials, dimensions, and color, and used them in the same manner. While this right is conceded, in its exercise there is no necessity or propriety in adopting a label already in use by another. But labels, like trademarks, may be adopted and used by a manufacturer or seller of goods, to distinguish his goods from those of others; and when another person uses the same label or a colorable imitation thereof, it produces the same result as would a copy or colorable imitation of a trademark—that is to say, it is a false representation, that the goods to which it is attached were manufactured or sold by the person whose label was copied or imitated, and purchasers are deceived and are liable to be defrauded. On principle, a person is as fully entitled to be protected in the use of his label as his trademark, and the authorities fully sustain this position. (See *Amoskeag* v. *Spear*, 2 Sand. S. C. 599; *Stokes* v. *Landgraff*, 17 Barb. 608; *Fetridge* v. *Wells*, 4 Abb. Pr. 144; *Coffeen* v. *Brunton*, 4 McLean, 516; *Williams* v. *Johnson*, 2 Bos. 1; *Croft* v. *Day*, 7 Beav. 84; Upton, 144.) The decision in *Falkinburg* v. *Lucy, supra,* is that an entire label will not be protected at common law as a *trademark;* but, while it may

be conceded that a label is not, strictly speaking, a trademark, the authorities, in our opinion, leave no doubt that the law does and should protect a party, against the use or colorable imitation of his label by another. The imitation by the defendants of the labels attached by Wolfe to his bottles and the wrappers, and of the stamp upon his boxes or cases, is very apparent and well calculated to deceive purchasers; and the plaintiffs are entitled to an injunction, to protect them from a further violation of their rights in those respects.

Order in each case dissolving the injunction is reversed, and the cause remanded with directions to modify the injunction so as to restrain the defendants from affixing, stamping, or attaching, or causing to be affixed, stamped, or attached to or upon the bottles, wrappers, or boxes in which is contained or packed the spirituous liquor manufactured, compounded, sold, or offered for sale by them, the name or word "Wolfe," or "Wolf," or "Von Wolf," or "Van Wolf," or any colorable imitation of the name or word "Wolfe," or the labels or stamps which are attached to or stamped on the plaintiff's bottles, wrappers, or boxes, or any colorable imitation of them or either of them.