ENEGLOTARIA MEDICINE Co., Plaintiff and Appellant, *v.* MANUEL SOSA-LÓPEZ, Defendant and Appellee.

No. 4085. Argued May 24, 1927.—Decided July 19, 1928.

*Leopoldo Feliú* for the appellant.   *M. Benítez Flores* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

The District Court of San Juan refused a preliminary injunction to restrain the defendant from continuing to use a certain device or label involving principally the use of the words "Alcoholado Porto Rico," but no opinion was rendered.   There was an appeal.

The plaintiff alleges in the complaint that in or about the year 1923 the plaintiff began to manufacture in the United States and to sell in Porto Rico a bay rum or *alcoholado* prepared according to a formula belonging to the said plaintiff; that in order to identify the product in the market labels were affixed to the bottles containing the product bearing the words "Alcoholado Porto Rico," the words "Porto Rico" constituting the principal name and means of identification; that since that date the plaintiff has been selling the said product in Porto Rico, opening and promoting this market, where it was then unknown, until its sales reached the considerable sum of 3,000 gross of bottles representing an annual sale of $144,000; that since 1924 the defendant, without the consent of the plaintiff and with the only intention of taking advantage of the credit and fame acquired by the product of the plaintiff, began to sell and is still selling in Porto Rico another bay rum or *alcoholado* whose color can not be distinguished from the product of the appellant in bottles to which labels are affixed on which that product is designated by the name of "Gloria de Puerto Rico" with the word "Alcoholado" immediately under the said name, thus inducing the public to buy that product under the erroneous impression that it is buying the product of the plaintiff; that the intention of the defendant in putting his product on the market in that manner was to compete with the product of the plaintiff, succeeding in this manner in making sales amounting to 300 gross yearly representing a value of

$14,000; that the defendant has done this knowing that the plaintiff was the first to use the words "Porto Rico" to identify its product; that it is the intention and purpose of the defendant to continue to make such sales, and that in execution of his purpose on December 29, 1925, the said defendant attempted to register in the office of the Executive Secretary of Porto Rico as his trademark a label or design containing the words "Gloria de Puerto Rico," "Alcoholado," the registration of which was denied by the Secretary because the plaintiff had on its label the words "Porto Rico" registered in the Patent Office at Washington, and because the plaintiff was the first to adopt these words.

The defendant denied the material allegations of the complaint and alleged as in his defense that in or about the month of May, 1924, a petition for a writ of injunction was filed in this same case by the plaintiff against this defendant in the District Court of the United States for Porto Rico in which proceeding the judge of the said court finally held that the label lastly used by the defendant on his bay rum called "Gloria de Puerto Rico" did not infringe the rights of the plaintiff or affect the label used by the said plaintiff on its bay rum called "Alcoholado Porto Rico" and that its use did not violate the injunction issued by the said court.

The first assignment of errors is as follows:

"The court erred in overruling our motion to strike certain parts of the answer and our motion praying that a preliminary injunction issue, based on the pleadings."

For various reasons, including the death of Judge Franco Soto and the overcrowded condition of our calendar, the disposition of this case has been long delayed. In many respects the principal questions raised are novel for this jurisdiction, but, as we agree with the appellant with regard to them, we shall not give extended attention to the questions of pleading and practice raised by the complainant.

The appellant insists that it was entitled to a judgment

on the pleadings. The theory was that the form of the denial for each of certain paragraphs of the complaint admitted the truth of the averments contained therein and that by other paragraphs of the answer the defendant had indulged in negative pregnants with the same result. To a high degree the appellant is right.

An answer which says "I deny for lack of sufficient information," or equivalent words, would generally be insufficient. This is especially true where a complaint contains various averments.

Likewise, to set up a series of other facts without directly denying the facts of a complaint, may involve a negative pregnant, and such a condition arose in large part in the answer involved in this case. 1 Sutherland, Code Pleading, Practice and Forms, ed. 1910, section 421 *et seq.*

We think the court erred in not causing the pleadings to be reformed at the instance of the complainant. There was nothing done by the appellee or by the court to simplify the issues.

Not without considerable doubt, as there were serious questions of law and mixed questions of law and fact involved and a question of *res adjudicata* raised, we think the complainant suffered no real prejudice. There was bound to be a hearing. The court heard the evidence on both sides. Situations were suggested by the pleadings that perhaps merited a hearing and the real controversy was presented. We say this with the reserve that our holding as to lack of prejudice should not serve as a precedent for another case. We are induced to our holding because, as we have said, we agree almost entirely with the appellant on the main issues.

When, however, the appellee insists, as he does in his brief, that the complainant and appellant failed to prove certain averments, insufficiently denied, we have the idea that the complainant had a right to rely on the facts of the complaint so insufficiently denied. We do not question, therefore, that the principal part of the plaintiff's label was

"Alcoholado Porto Rico," despite the fact that other signs and symbols were used and that the bay rum of the complainant was known and used since 1923 by the name of "Alcoholado Porto Rico." Likewise, that the said bay rum was sold in Porto Rico practically from that date. These facts, besides, sufficiently appear from the whole evidence.

At this point we deem it convenient to say that for the purpose of unfair competition in trade there is no difference between the words "Porto Rico" and "Puerto Rico." They would fall under the doctrine of *idem sonans*. An intending purchaser, besides, uses his eyes rather than his ears and no one not versed in linguistic subtleties would distinguish between the two names. "Puerto Rico" is the correct Spanish name for the country, but "Portorriqueño" correctly describes a native of the Island. For a commercial purpose of this sort with unlimited free communication between the United States and this Island the two names are identical.

As a lemma to a discussion on the plea of *res adjudicata,* we wish to say that as a very general rule, subject perhaps to limited exceptions, no one can absolutely prevent other persons from using words descriptive of goods, or of a geographical term like "Porto Rico." The exceptions are more apparent than real. A term like "Vichy" is subject to exclusive appropriation elsewhere, if no one in that town is selling mineral waters other than the person seeking protection. There can then be no acquisition of the right to a trademark in the strict sense. The United States Patent Office, for example, will refuse to register as a trademark a geographical term, and similarly would have refused registration of a term like "Vichy." The courts, however, will protect against unfair competition the owner who, to identify his product, uses as a trade name a geographical term. The courts in that instance say that the word has acquired a secondary significance. We shall enlarge on these considerations hereafter.

The Federal courts will prevent infringements of trademarks strictly so called, but will not protect against unfair competition in trade, unless jurisdiction is obtained by the accident of diversity of citizenship.

The complaint presented in the District Court of the United States for Porto Rico is copied into the record. It shows that the complainant obtained a registered trademark from the United States Patent Office, consisting of various representations and principally a picture of a landscape, although including the words "Alcoholado Porto Rico" as part of the description of the whole label. The registry was obtained on the whole description or on some part thereof other than the term "Alcoholado Porto Rico," which by itself was insusceptible of registration in the Patent Office. The principal theory of the suit in the Federal Court was that the defendant had infringed the trademark. It hurts rather than helps the defendant's cause that it appears in the record that the Federal Court did enjoin the defendant in certain respects. A reading of the complaint and the opinion of Mr. Justice Wells convinces us that the Federal Court acquired and took jurisdiction solely on the ground of an alleged infringement of a trademark in its technical sense. The defendant was enjoined and subsequently modified his label. Then when the complainant tried to obtain further injunctions or even a contempt proceeding the United States District Court held in effect that the defendant had sufficiently modified his mark and that there was no further infringement and no violation of any injunction. The suit was brought and fought out on a theory of infringement of a trademark. Unfair competition in trade, although spoken of, if involved at all, was no real part of the controversy. The jurisdiction of the Federal Court did not depend at all upon a diversity of citizenship, although such diversity was mentioned.

No damages were apparently awarded by the Federal Court and the injunction was solely to cover the violation of

548

the registrable part of complainant's device or label. To what extent the complainant might obtain an injunction against the defendant to prevent the use of the words "Porto Rico" or "Puerto Rico" in the sale of *alcoholado* was not really before the Federal Court, even though, among other things, the defendant was made to change on his label a certain position of the words "Puerto Rico." Under these circumstances we hold that the two causes of action were distinct; that the case never reached such a form in the Federal Court as would prevent the complainant from pursuing a remedy for the unfair competition the object of the suit before us.

Subject to a possibility of correction at a final hearing the principal facts set out in the complaint became established in this case namely:

That in 1923 the complainant commenced to sell on this Island a bay rum or *alcoholado* with the name of "Alcoholado Porto Rico" printed or displayed on the labels which are affixed to the containers of the product which was manufactured from a recipe belonging to the said complainant; that the *alcoholado* of the complainant is made and manufactured by the Eneglotaria Medicine Co. of New York City.

That at that date (1923) the product was unknown in Porto Rico and that the appellant began a campaign to open up and assure itself of a market, which said campaign continued until the filing of this suit and from which it obtained large sales.

That the product became known to the public as "Porto Rico" or "Alcoholado Porto Rico."

That while the defendant made some attempt to use or sell his mark "Gloria de Puerto Rico" at some earlier date, he did not enter actively into the market until about October, 1925; that the *alcoholado* of the defendant is not produced in Porto Rico, but made or manufactured by the Fratello Chemical Co. at Cleveland, Ohio.

That the bottle used by the defendant to sell his product is substantially the same size and form as the bottle used by the complainant; that the color of the liquid contained in the bottles is indistinguishable except by a very close scrutiny and by placing the bottles side by side, and that even then it takes some attention to make the distinction; that the bottles are tipped in almost the same way with a yellow plastic substance easily broken or removed; that the words "Puerto Rico" appear on the defendant's label in very prominent connection with the word "Alcoholado"; that the only difference between the two labels in regard to the words "Porto Rico," "Puerto Rico," or "Alcoholado" is that the complainant puts the words "Alcoholado Porto Rico" at the bottom of its bottle while the defendant puts the words "Gloria de Puerto Rico" at the top and repeats it in the center of the bottle below the rising sun, following it up in each instance with the word "Alcoholado"; that the general color scheme of the two labels is similar enough to deceive a person who had had no experience with either of the two bottles, or did not have them placed side by side, although the two drawings are entirely distinct and the colors have very marked differences; that if a person who was using "Alcoholado Porto Rico" had shown it casually to some one else and recommended it, the person to whom the recommendation had been made could be readily deceived on asking for "Alcoholado Porto Rico"; that the original label of the defendant before the proceedings in the Federal Court made use of the words "Puerto Rico" lower down on the label and he was compelled to give up the use of such words in the spot selected.

As a further inference of fact, and at the risk of repetition, we are convinced that the product of the defendant in its container and with its label, while distinguishable when placed side by side with the label of the complainant, is not sufficiently distinct to prevent the buying public from being deceived into believing that it is buying the product of the

complainant when in point of fact it is buying the product of the defendant. A person, of course, who knew either mark very well would not be deceived.

Furthermore, we are satisfied from the evidence of the complainant, from the proceedings in the Federal Court, from the proceedings in the office of the Executive Secretary of Porto Rico, and significantly also from the testimony and conduct of the defendant on the witness stand, that the defendant set out deliberately to imitate the product of the complainant. The proceedings in the Federal Court showed that the original label of the defendant was then much more like that of the complainant, and hence the injunction and contempt proceedings that took place there. The proceedings in the Federal Court are strong proof of the intention of the defendant to imitate the product of the complainant. Whether or not the defendant entered into this competition because he was advised that he had a right to do so would make no difference. The present counsel for the defendant-appellee, as pointed out by him, did not originally represent defendant in the earlier stages of the competition.

Nevertheless, we are convinced that counsel is mistaken in a number of matters in regard to what constitutes unfair competition in trade. He is likewise mistaken when he says that the phrase "unfair competition" was first used in this court. The words were distinctly mentioned by counsel for appellant in one or more of the arguments before the district court. Of course if the facts make out a case of unfair competition the failure to characterize the dealings of the defendant as such can not affect the decision of the case.

Before discussing the law of the case it appears well to say that the complainant obtained its trademark in the United States Patent Office, without regard to the special use of the words "Alcoholado Porto Rico." As we have indicated, these words were not properly registrable and as a strict trademark could receive no protection, and received none in the Federal Court. However, as a matter of fact,

and this is important, the product of the complainant became known as "Alcoholado Porto Rico;" therefore the registration in the Patent Office, the proceedings in the Federal Court or in the office of the Executive Secretary are not of great moment if these words became a trade name of the complainant. As counsel of the latter maintained several times at the trial, his client was relying on its consuetudinary or customary rights.

The appellee is certainly right when he maintains that in general no one can obtain an absolutely exclusive right to appropriate for his wares a descriptive or geographical term. *Canal Co.* v. *Clark,* 13 Wall. 311, is one of the leading cases. As says the syllabus, no one can apply the name of a district of country to a well-known article of commerce, and obtain thereby such an exclusive right to the application as to prevent others inhabiting the district or dealing in similar articles coming from the district, from truthfully using the same designation.

In *Buzby* v. *Davis,* 150 Fed. Rep. 275, 10 A. & E. Ann. Cas. 68, the court held, again to quote the syllabus:

"Conceding, but not deciding, that the word 'Keystone' is a geographical term and not susceptible of monopolization as a trademark, yet its use by one manufacturer in his trade name or on his products to palm them off as those of another may constitute unfair competition and entitle the latter to an injunction and damages."

The court quotes numerous cases in which it says that geographical terms can not be monopolized as trademarks and then says practically what we have quoted from the syllabus and cites a great number of cases. In a note to the case the commentator says as follows:

"The above rule is subject to the exception, however, that where a geographical name has been so used in connection with a certain line of business as to indicate not only the place of manufacture or production, but the name of the manufacturer or producer and the excellence of the thing made, then it has acquired such secondary significance or meaning as will entitle the one who has so used the

same to protection in its use by means of an injunction restraining others from using the name in such a manner as will mislead buyers as to the actual origin or quality of the thing produced or sold, or enable such other persons to palm off their goods as the goods of the prior user.''

The note is very elaborate and covers all sorts of cases and very many of them quite applicable to the facts of the case before us.

In another part of the text it is said:

''Where a geographical term has become the 'short name' by which the public generally call for the goods of a particular person, the use of the term by another person in such a manner as to deceive the public will be enjoined.''

The text also cites from *Siegert* v. *Gandolfi,* 149 Fed. 100, where the court held that if the geographical name had become a secondary designation indicative of the product of a particular manufacturer, it was as much entitled to protection as any arbitrary or fancy name which he might have selected.

Cases were also cited wherein it was held that where the article to which a geographical name is applied is a product of a place named the term can not be used as a trade name by one person to the exclusion of others who are the owners of like products of the same place, but even as against residents the use of a geographical name would be enjoined where the name is employed by a subsequent user in such a manner as will enable him to deceive the public and to palm off his goods as the goods of the first user.

The upshot of all the jurisprudence is, it may be said, that the defendant can use a word like ''Porto Rico'' in connection with bay rum only if, in presenting his goods to the public, he makes it absolutely clear that the goods are not those of the complainant. Where a person makes a special product like ''Alcoholado Porto Rico'' any subsequent user of *alcoholado* is under a distinct duty to prevent his goods from being mistaken for the goods of the first user.

Perhaps one of the most interesting cases to show the extent to which the courts will go is the Singer Sewing Machine Case. The patent for the use of the sewing machine had long since expired. It is one of the principles of patent law that when the right to the monopoly has expired the public has a complete right to make and to sell the article formerly patented. Nevertheless, the Singer Sewing Machine Company went on producing machines and the court held that the public had a right to sell a Singer sewing machine and call it a Singer sewing machine, but that nevertheless the Singer sewing machine people had certain rights and that a person who was selling a Singer sewing machine must distinguish it from the original Singer sewing machine and let the public know that the place of manufacture was distinct or that the people who were manufacturing it were distinct, and this clearly. *Singer Sewing Machine Co.* v. *June Manufacturing Co.*, 163 U. S. 169. The decree of the court was that the defendant be enjoined from using the word "Singer," or any equivalent thereto in advertisements in relation to sewing machines without clearly and unmistakably stating that the machines are made by the defendant as distinguished from the sewing machines made by the Singer Sewing Machine Company, and also from using the word "Singer" on any plate or device without clearly and unmistakably specifying that such machines are the product of the defendant, etc.

*The French Republic* v. *Saratoga Vichy Spring Co.*, 191 U. S. 427, was another case where it was shown how geographic names may be protected. The court said:

"True the name is geographical; but geographical names often acquire a secondary signification indicative not only of the place of manufacture or production, but of the name of the manufacturer or producer and the excellence of the thing manufactured or produced, which enables the owner to assert an exclusive right to such name as against every one not doing business within the same geographical limits; and even as against them, if the name be used fraudulently

for the purpose of misleading buyers as to the actual origin of the thing produced, or of palming off the productions of one person as those of another.''

The appellant also cited a number of other cases which have bearing on the subject-matter, but we have found it convenient principally to cite the decisions of the Supreme Court of the United States. Other citations covering the subject-matter will be found in the notes of *Dyment* v. *Lewis*, 26 L.R.A. (N. S.) 73–77, and in *W. R. Lynn Shoe Co.* v. *Auburn-Lynn Shoe Co.*, 4 L.R.A. (N. S.) 960.

The foregoing considerations cover the questions in the brief of the appellee who has cited no cases to us, except one from California, *Burke* v. *Cassin*, 45 Cal. 467. As suggested by that case, the legal situation might be a little different if the words ''Porto Rico'' had become identified with the production, manufacture or sale of bay rum, but even then the defendant here could not be aided because of the facts before us as outlined. Incidentally we may say that, while we respect the California jurisprudence, in a matter of this kind other precedents are equally applicable. In *Burke* v. *Cassin*, while the words ''Schiedam Schnapps'' were not subject to exclusive appropriation, an injunction was granted for reasons similar to those we have enunciated.

The defendant argues that geographical terms can not be appropriated and says that if it were so he could not understand how the New York Tribune, the New York Times and the New York Herald could be published at the same time. Of course in New York City anybody has a right to the use of the name for a newspaper. The newspapers do not attempt to palm off their editions as belonging to somebody else; on the contrary, they make every effort to distinguish them. If a newspaper started to palm off its editions as belonging to some other newspaper the courts would promptly protect if their jurisdiction was invoked.

In the notes to *Buzby* v. *Davis*, 10 A. & E. Ann. Cas., *supra*, cases will be found where ''St. Louis'' has been pro-

tected, also "Southwestern," "Chicago," "Minneapolis," "California" and "New York."

The foregoing covers the other assignment of error presented by the appellant.

We feel bound to hold, therefore, that the defendant has been guilty of unfair competition in trade and the complainant is entitled to a preliminary injunction, more or less subject to the discretion of the court, in the form of the original restraining order issued in this case. The order appealed from will be reversed, the defendant enjoined upon the proper giving of a bond to be determined by the court below, and the case will be sent back for further proceedings not inconsistent with this opinion.

Mr. Justice Texidor took no part in the decision of this case.