IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————————

No. 99-50854

————————

ENRIQUE BERNAT F., S.A.; S.A. CHUPA CHUPS,

Plaintiffs-Counter Defendants-Appellees,

v.

GUADALAJARA, INC.; ET AL.,

Defendants,

GUADALAJARA, INC., doing business as
Dulces Vero USA,

Defendant-Counter Claimant-Appellant.

————————————————————

Appeal from the United States District Court
for the Western District of Texas
————————————————————
April 18, 2000

Before REYNALDO G. GARZA, HIGGINBOTHAM, and BENAVIDES, Circuit
Judges.

BENAVIDES, Circuit Judge:

Appellant Guadalajara, Inc. d/b/a Dulces Vero USA ("Dulces Vero") appeals from the imposition of a preliminary injunction forbidding it to sell its soft-serve frozen yogurt cone-shaped lollipops under the mark "Chupa Gurts" in the United States. The district court determined that Dulces Vero's mark infringed the mark "Chupa Chups," held by appellees Enrique Bernat F., S.A. and S.A. Chupa Chups (collectively "Chupa Chups"). Because we find that the record below adequately demonstrated that the term "chupa" is a generic Spanish word that designates "lollipop," we

hold that the district court abused its discretion in finding a likelihood of confusion between the marks "Chupa Chups" and "Chupa Gurts."  We therefore vacate the district court's judgment and remand.

### I.     Factual and Procedural Background

Headquartered in Barcelona, Spain, Chupa Chups manufactures and distributes lollipops in, among other places, the U.S. and Mexico, under the mark "Chupa Chups."  Though Chupa Chups sells 27 flavors of lollipops, its best-sellers (accounting for 50% of its U.S. sales) are five "ice cream flavored" lollipops that contain milk.

Based in Mexico, Dulces Vero also produces lollipops for the U.S. and Mexican market.  Dulces Vero is renowned for crafting lollipops in unusual shapes.  One such effort is the subject of this suit: a frozen yogurt-flavored lollipop shaped like a soft-serve frozen yogurt cone sold under the name "Chupa Gurts."

Dulces Vero, which has been selling "Chupa Gurts" in Mexico for two years, introduced the product to the U.S. at the 1998 All Candy Expo ("the Expo") in Chicago.  The appearance at the Expo led to a mention of "Chupa Gurts" in The Manufacturing Confectioner, an industry magazine, which, in turn, alerted Chupa Chups to the existence of its similarly-named competitor.  Chupa Chups contacted Dulces Vero to ascertain whether it was selling "Chupa Gurts" in the U.S.  Dulces Vero replied that it was not, though apparently independent distributors–many of whom own "mom and pop" stores–were purchasing "Chupa Gurts" in Mexico for

2

resale in the U.S.  Dissatisfied with this state of affairs, Chupa Chups filed the instant suit.

After a hearing, the magistrate judge issued a report and recommendation on June 16, 1999, advocating the granting of a preliminary injunction barring Dulces Vero from selling or marketing any candy or confectionary product under the name "Chupa Gurts."  The district court adopted the magistrate's report on August 3, 1999.[1]

Dulces Vero timely filed this appeal.

## II.    Standard of Review

To obtain a preliminary injunction, a plaintiff must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat that it will suffer irreparable injury absent the injunction; (3) that the threatened injury outweighs any harm the injunction might cause the defendants; and (4) that the injunction will not impair the public interest.  See Sugar Busters L.L.C. v. Brennan, 177 F.3d 258, 265 (5th Cir. 1999). Because these four elements constitute mixed questions of fact and law, we review the district court's factual findings for clear error, but we apply de novo review to its legal

---

[1]  Between June 16, 1999, when the magistrate issued his report and recommendation, and August 3, 1999, when the district court adopted it, the confectionary industry held the 1999 Expo. Despite the fact that, at the time of the Expo, the report and recommendation lacked the force of law (because it had not yet been approved by the district court), Dulces Vero did not showcase "Chupa Gurts" at the 1999 Expo because to do so would have contravened the terms of the preliminary injunction the magistrate recommended.

3

conclusions.  See <u>Sunbeam Prods., Inc. v. West Bend Co.</u>, 123 F.3d 246, 250 (5th Cir. 1997).  We may only reverse the district court's ultimate decision to grant the injunction if we conclude that it abused its discretion, though a decision based on erroneous legal principles is subject to <u>de</u> <u>novo</u> review.  See <u>Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of America Co.</u>, 195 F.3d 765, 772 (5th Cir. 1999).

### III.    <u>Trademark Infringement</u>

The parties agree that the controversy centers on the term "chupa."  Dulces Vero claims the district court never conducted a validity of the mark analysis[2] and thereby failed to ascertain

---

[2]   The district court did err, as Dulces Vero alleges, by failing to conduct a validity of the mark analysis before proceeding to the likelihood of confusion inquiry.  See <u>Pebble Beach Co. v. Tour 18 I, Ltd.</u>, 155 F.3d 526, 536-37 (5th Cir. 1998) (setting forth the two prong test for infringement: (1) assess the validity of the mark, i.e. is it inherently distinctive or has it acquired secondary meaning; and (2) ascertain likelihood of confusion).  Courts conduct the validity analysis by classifying the mark as generic, descriptive, suggestive, arbitrary or fanciful.  See <u>Pebble Beach Co. v. Tour 18 I, Ltd.</u>, 942 F. Supp. 1513, 1537 (S.D. Tex. 1986).  Generic marks, of course, receive no protection, and descriptive marks must have secondary meaning to garner protection.  <u>Id.</u>  Here, the district court, in assessing whether "Chupa Chups" was valid, merely observed that Chupa Chups first registered the mark in 1966, and, after allowing it to lapse on April 7, 1997 for failure to file the necessary affidavits for renewal, regained it on November 24, 1998.  Though a registered mark is entitled to a presumption of validity, <u>see</u> 15 U.S.C. § 1057(b), this presumption has never absolved the district court of its responsibility to conduct an independent validity of the mark analysis.

Nevertheless, as Chupa Chups emphasizes, the district court did find the mark arbitrary in the likelihood of confusion analysis when it examined the strength of the mark.  Therefore, the district court classified the mark during the wrong part of the analysis.  This constitutes reversible error because, as we detail below, "chupa" is generic, and therefore, that likelihood

4

that the mark "chupa," which corresponds to "lollipop" in Spanish, is generic and unworthy of protection. Moreover, Dulces Vero asserts that no likelihood of confusion exists between "Chupa Gurts" and "Chupa Chups."

Chupa Chups counters that the district court correctly held "chupa" to be an arbitrary mark, and that consumers are likely to confuse the two marks.

The parties agree that application of the doctrine of foreign equivalents governs the outcome of this dispute. This doctrine requires courts to translate foreign words into English to test them for genericness or descriptiveness. See Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1531 (4th Cir. 1984); see also 2 McCarthy on Trademarks and Unfair Competition, § 11:34, at 11-60. The act of translation, of course, can itself be an imprecise task, as foreign words sometimes have no exact equivalent in English; therefore, courts may rely on the "primary and common translation" in determining English equivalency. 3 McCarthy, supra, § 23:38, at 23-85. Additionally, courts need not concern themselves with words from obsolete, dead, or obscure languages, see McCarthy, supra, at 11-60-11-60.1, because one policy undergirding the doctrine is "the assumption that there are (or someday will be) customers in the U.S. who speak that foreign language." Otokoyama Co. Ltd. v. Wine of Japan Import, Inc., 175 F.3d 266, 270 (2d Cir. 1999). The other policy

of confusion analysis should have compared only the arbitrary parts of the marks-i.e. "Chups" and "Gurts"-not "Chupa Chups" and "Chupa Gurts."

5

justification is one of international comity: because U.S. companies would be hamstrung in international trade if foreign countries granted trademark protection to generic English words, the U.S. reciprocates and refuses trademark protection to generic foreign words.  See In re Le Sorbet, Inc., 228 U.S.P.Q. 27, 31 (T.T.A.B. 1985) ("The rationale of these protests [by the State Department against registration of generic English words abroad] is that registration of generic terms as trademarks would interfere with the free flow of international trade in products known by that generic term."); 2 McCarthy, supra, § 12:41, at 12-85.  Though the doctrine of foreign equivalents is a well-established precept of trademark law, no Fifth Circuit case has heretofore applied it.

The first step in the analysis is translating the word "chupa."  Though Dulces Vero elicited testimony from Chupa Chups' representative, Victor Tresserras ("Tresserras"), a native Spanish-speaker, that "chupa" translates as "lollipop" in Spanish slang, the district court found that the primary meaning of the word was "to lick" or "to suck."  This finding is not an abuse of discretion because the district court should use the primary and common translation of the word, and both parties agree that "chupa" is a form of the verb "chupar," meaning "to lick" or "to suck."

The analysis does not end here, however, because Dulces Vero maintains that the verb meaning "to lick" or "to suck," when used as a noun, is nonetheless a generic designator of lollipops in

6

Spanish.  Chupa Chups scoffs at this argument, claiming that generic terms are always nouns that translate literally to mean the general term for a product–i.e. "paleta" means "lollipop."[3] The cases, however, do not endow "generic" with quite so narrow a definition.  In Otokoyama Co., the defendants alleged that "otokoyama" was the generic Japanese term for "sake."  The Second Circuit agreed, even though "otokoyama" literally translated as "man/mountain," not "rice liquor."  See 175 F.3d at 268. Similarly, in Burke v. Cassin, 45 Cal. 467, 476 (1873), the California Supreme court held that "schnapps" was generic for gin, despite the fact that its literal translation from German meant "dram" or "drink."  And again, in Holland v. C. & A. Import Corp., 8 F. Supp. 259 (D.N.Y. 1934), the court found "est est est" to be the generic term for Montefiascone wine, even though the term literally translates as "it is it is it is."  Therefore, despite the fact that the lower court did not literally translate it to mean "lollipop," "chupa" could be generic if it has come to signify lollipops in Spanish-speaking countries, like Mexico.

The evidence in the record suggests that "chupa" does generically designate "lollipops."  Most significantly, Dulces Vero presented evidence that two other products–aside from "Chupa Chups" and "Chupa Gurts"–use the mark "chupa" on lollipops in

---

[3]  The Spanish word for "lollipop" is "paletas," but this does not foreclose "chupa" from functioning as an additional generic term for lollipops, much as the word "sucker" in English is also a generic term for a lollipop.  See 2 McCarthy, supra, § 12:9, at 12-19 ("Any product may have many generic designations.").

7

Mexico.  These marks are "Chupadedo" and "Tutsi Chupa Pop," the latter having been licensed by Tootsie Roll Industries ("Tootsie").  That other lollipops in Mexico use the term "chupa" in their marks is a strong indication that the Spanish-speaking Mexican population understands "chupa" to designate lollipops.

Moreover, Tresserras, who was Chupa Chups' own representative, testified, "In certain regions 'chupa' is used to refer to a lollipop or a sucker when used as a noun.  When somebody goes into a local candy shop and asks for a chupa, then it'll be understood more times than not that it's a lollipop."  Dulces Vero additionally submitted evidence that other derivations of "chupar" also mean lollipop in different Spanish dialects: "chupa chupa" means lollipop in southern South America[4] and "chupatinos" means "lollipop" in Argentina.

Chupa Chups itself encourages consumers to think of "chupa" as a common word, not a trademark.  The "Chupa Chups" wrapper states "'Chupa Chups' means 'to lick a lollipop' in Spanish." While this phrase casts "chups," not "chupa" as meaning "lollipop," the overall import of the wrapper is that "chupa" functions as a common word, not a trademark.[5]

---

[4]  Specifically, this dialect is spoken in Argentina and Uruguay.  Chupa Chups argues that because this dialect is not spoken in a single, Spanish-speaking country, the dialect is irrelevant.  Its argument must fail.  The doctrine of foreign equivalents does not require that the language or dialect be spoken in a country as a whole.  "A word may . . . be generic by virtue of its association with a particular region, cultural movement, or legend."  Otokoyama Co., 175 F.3d at 271.

[5]  Chupa Chups argues vigorously that it intended this phrase as a slogan, like "Motts means fruit," not as a literal

8

The district court relied heavily on the fact that Spanish-English dictionaries did not seem to translate "chupa" as "lollipop," but "numerous terms have been found to be generic despite their absence from the dictionary."  Liquid Controls Corp. v. Liquid Control Corp., 802 F.2d 934, 937 (7th Cir. 1986).  This results from the fact that dictionary evidence is not dispositive.  "[T]here is likely to be a delay between a word's acceptance into common usage and its entry in a dictionary.  Dictionary entries also reflect lexicographical judgment and editing which may distort a word's meaning or importance."  Berner Int'l Corp. v. Mars Sales Co., 987 F.2d 975, 983 (3d Cir. 1993).  This latter point is particularly persuasive in the context of a Spanish-English dictionary, where the editor's discretion extends not merely to the meaning of the English word, but also to what its closest Spanish equivalent might be.  Because translation is itself such an interpretative task, the absence in the record of an entry in a Spanish-English dictionary that defines "chupa" as a "lollipop" is not controlling.

---

translation of its trademark.  This is unpersuasive.  The average English-speaking consumer knows "Motts means fruit" is a slogan because it identifies "Motts" as a trademark and understands the phrase to mean that Motts uses fruit in its products.  Conversely, the average English-speaking consumer who does not also speak Spanish will have no basis for realizing that the slogan "'Chupa Chups' means 'to lick a lollipop' in Spanish," is a slogan, rather than a literal translation.  Moreover, even Spanish-speaking consumers might read the phrase literally because "chupa" does mean "to lick."  That the Spanish-speaking consumer would not recognize "chups" does not alter this analysis because he might assume that "chups" is simply another derivation of "chupar" meaning "lollipop" in a dialect with which he is unfamiliar.

9

In addition to this evidence in the record demonstrating that "chupa" is generic, the policies undergirding the doctrine of foreign equivalents both strengthen that conclusion. The first explanation for denying trademark protection to generic foreign words is that Spanish-speakers in the U.S. will understand "chupa" to be generic. This is particularly true on these facts, where "Chupa Gurts" are now available in the U.S. only in ethnic "mom-and-pop" stores that serve Spanish-speaking consumers. In addition, Spanish is widely spoken in the U.S., particularly in Texas, where "Chupa Gurts" are being sold by these independent distributors. The district court discounted these facts, emphasizing that Dulces Vero's ultimate goal was to market "Chupa Gurts" more widely. Even a wider distribution, however, will not change the fact that Spanish-speakers from Mexico and parts of South America will understand "chupa" to be the generic designator of "lollipop." "No merchant may obtain the exclusive right over a trademark designation if that exclusivity would prevent competitors from designating a product as what it is in the foreign language their customers know best." Otokoyama Co., 175 F.3d at 271.

Moreover, the policy of international comity has substantial weight in this situation. If we permit Chupa Chups to monopolize the term "chupa," we will impede other Mexican candy makers' ability to compete effectively in the U.S. lollipop market. Just as we do not expect Mexico to interfere with Tootsie's ability to market its product in Mexico by granting trademark protection in

10

the word "pop" to another American confectioner, so we cannot justify debilitating Dulces Vero's attempts to market "Chupa Gurts" in the United States by sanctioning Chupa Chups' bid for trademark protection in the word "chupa."

For these reasons, we hold that "chupa" is a generic Spanish word that designates "lollipop" or "sucker." Because generic terms cannot obtain trademark protection, the only part of Chupa Chups' mark that can garner trademark protection is "Chups." The district court therefore erred by conducting the likelihood of confusion analysis with the marks "Chupa Chups" and "Chupa Gurts" instead of "Chups" and "Gurts," which are the only distinctive parts of either of the parties' marks. Thus, its assessment that a likelihood of confusion existed between the two marks was in error, and consequently, so was its determination that Chupa Chups had shown a likelihood of success on the merits. The grant of a preliminary injunction was therefore an abuse of discretion.

As a result of our disposition of this case, we need not reach the questions of the amount of the bond or of whether the trial court enjoined the proper parties.

## IV.    Conclusion

We hold that "chupa" is a generic term designating "lollipop" in Spanish. We therefore conclude that the district court abused its discretion when it found a likelihood of confusion between the marks "Chupa Chups" and "Chupa Gurts." For this reason, we vacate the preliminary injunction and remand to the district court for further proceedings.

11

VACATED and REMANDED.