ENEGLOTARIA MEDICINE Co., demandante y apelante, *v.* MANUEL SOSA LÓPEZ, demandado y apelado.

No. 4085.—*Visto:* Mayo 24, 1927. *Resuelto:* Julio 19, 1928.

*Leopoldo Feliú,* abogado de la apelante; *M. Benítez Flores,* abogado del apelado.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

La Corte de Distrito de San Juan rehusó expedir un *injunction* preliminar para restringir al demandado que continuara usando cierto diseño o rótulo que envolvía principalmente el uso de las palabras "Alcoholado Porto Rico," pero no emitió opinión alguna. Se apeló.

La demanda en lo esencial alega: que allá por el año 1923 la demandante comenzó a manufacturar en los Estados Unidos continentales y a vender en Puerto Rico un alcoholado o "bay rum" preparado conforme a una receta de la demandante, y que con el fin de identificar el artículo en el mercado, adoptó un rótulo para ser adherido a los frascos en los que se envasaba el producto, en que aparecía la frase "Alcoholado Porto Rico," constituyendo la palabra "Porto Rico" el principal nombre y medio de su identificación; que desde aquella fecha la demandante ha venido vendiendo en Puerto Rico dicho producto, abriendo y fomentando este mercado en el que era entonces desconocido, hasta que sus ventas alcanzaron la considerable suma de 3,000 gruesas de frascos, que representa una venta anual de 144,000; que el demandado desde 1924, sin el consentimiento de la demandante y con el único propósito de aprovecharse del crédito y fama adquiridos por el producto de la demandante, comenzó a vender en Puerto Rico y está aún vendiendo en esta Isla otro alcoholado o "bay rum" con un color que no puede distinguirse del producto de la apelante, y envasado en frascos, a los que se ad-

liere un rótulo en el que se designa tal producto con el nombre "Gloria de Puerto Rico" con la palabra "Alcoholado" inmediatamente debajo de dicho nombre, induciendo así al público a comprar ese producto en la errónea creencia de que está adquiriendo el mismo de la demandante; que el propósito del demandado al poner en tal condición su producto en el mercado era hacer la competencia al producto de la demandante, logrando de este modo realizar ventas por la cantidad de 300 gruesas al año que representa un valor de $14,000; que el demandado ha realizado estos actos sabiendo que la demandante fué la primera en emplear la palabra "Porto Rico" para identificar su producto; que intenta y se propone continuar haciendo tales ventas y que en ejecución de su propósito en diciembre 29 de 1925 dicho demandado trató de registrar en la Secretaría Ejecutiva de Puerto Rico, como marca de fábrica suya, un rótulo o diseño conteniendo la frase "Gloria de Puerto Rico," "Alcoholado," la que fué denegada por dicho funcionario, por tener la demandante en su rótulo estampada la palabra "Porto Rico" registrada en la Oficina de Patentes de Washington y por ser la demandante la primera en adoptar tal palabra.

El demandado negó los hechos esenciales de la demanda y alegó como defensa: que allá por el mes de mayo de 1924 este mismo caso fué objeto de una demanda de *injunction* por la demandante contra el mismo demandado ante la Corte de Distrito de los Estados Unidos para Puerto Rico, en cuya acción, después de varios incidentes, el juez de dicha corte declaró que el rótulo que últimamente usaba el demandado en su alcoholado "Gloria de Puerto Rico" no infringía el derecho de la demandante, ni afectaba el rótulo que ella usa en su alcoholado "Porto Rico" y que el uso del mismo no viola el *injunction* que había dictado dicha corte.

El primer señalamiento de error dice así:

"Que la Corte cometió error al denegar nuestra moción elimina-

toria de ciertas partes de la contestación y nuestra moción para que se decretara el injunction preliminar por las alegaciones.''

Por varios motivos, incluyendo la muerte del Juez Franco Soto y la aglomeración de asuntos en nuestro calendario, la resolución de este caso ha sido demorada por largo tiempo. En muchos respectos las cuestiones principales levantadas son nuevas en esta jurisdicción, pero como estamos de acuerdo con la apelante acerca de ellas, no prestaremos extensa atención a las cuestiones de alegaciones y procedimiento levantadas.

La apelante insiste en que tenía derecho a una sentencia sobre las alegaciones. La teoría era que la forma de la negación en cada uno de ciertos párrafos de la demanda admitía la certeza de la alegación en ellos contenida y que en otros párrafos de la contestación el demandado había incurrido en *negative pregnants* con el mismo resultado. La demandante tiene bastante razón.

Una contestación que dice ''Niego por falta de suficiente información,'' o palabras similares, por lo general sería insuficiente. Esto es cierto especialmente cuando una demanda contiene varias alegaciones.

De igual modo alegar una serie de hechos distintos sin negar directamente los hechos de la demanda, puede envolver una *negative pregnant* y tal situación surgió en gran parte en la contestación radicada en este caso. 1 Sutherland, Code Pleading, Practice and Forms, ed. 1910, sección 421 *et seq.*

Creemos que la corte erró al no hacer que las alegaciones (*pleadings*) fuesen modificadas a instancia de la demandante. Nada hizo el apelado o la corte para simplificar las cuestiones en controversia.

No sin dejar de tener considerables dudas, ya que había serias cuestiones de derecho y cuestiones mixtas de hecho y de derecho envueltas y una cuestión de *res adjudicata* levantada, creemos que la demandante no sufrió verdaderos perjuicios. Necesariamente tenía que celebrarse una vista. La corte oyó la prueba de ambas partes. Las alegaciones sugirieron situa-

ciones que quizá merecían la celebración de una vista, y la verdadera controversia quedó presentada. Decimos esto con la reserva de que nuestra resolución respecto a la falta de perjuicio no debe servir de precedente para otro caso. Hemos sido inducidos a llegar a tal resolución porque, como hemos dicho, convenimos casi enteramente con la apelante en las cuestiones principales.

Sin embargo, cuando el apelado insiste, conforme lo hace en su alegato, en que la demandante y apelante dejó de probar ciertas alegaciones que fueron negadas insuficientemente, tenemos la idea de que la demandante tenía derecho a descansar en los hechos alegados en la demanda, que fueron negados tan insuficientemente. Por tanto, no tenemos duda de que la parte principal del rótulo de la demandante eran las palabras "Alcoholado Porto Rico," a pesar del hecho de que otros diseños y símbolos eran usados y de que el alcoholado de la demandante era conocido y usado desde 1923 con el nombre de "Alcoholado Porto Rico." Igualmente, que dicho alcoholado era vendido en Puerto Rico prácticamente desde esa época. Además, esos hechos aparecen suficientemente de toda la prueba.

En este estado del caso creemos conveniente decir que para los fines de la competencia ilegal en el comercio no existe diferencia alguna entre las palabras "Porto Rico" y "Puerto Rico." Ellas caerían bajo la doctrina de *idem sonans*. Un comprador en perspectiva, además, usa su vista más bien que su oído y nadie que no esté versado en sutilezas lingüísticas distinguiría los dos nombres. "Puerto Rico" es el nombre correcto de esta Isla en español, pero la palabra "portorriqueño" describe correctamente a un nativo de la isla. Para fines comerciales de esta índole, y existiendo un libre intercambio ilimitado entre los Estados Unidos y esta Isla, ambos nombres son idénticos.

Como lema de la discusión de la alegación de *res adjudicata,* deseamos manifestar que como regla muy general,

sujeta tal vez a limitadas excepciones, nadie puede impedir absolutamente a otras personas que usen palabras que describan sus productos o un término geográfico como "Porto Rico." Las excepciones son más aparentes que reales. Una palabra como "Vichy" está sujeta a ser apropiada exclusivamente, si nadie en la ciudad de ese nombre se dedica a la venta de aguas minerales a excepción de la persona que solicita protección. Luego no puede haber la adquisición del derecho a una marca de fábrica en el sentido estricto. Por ejemplo, la Oficina de Patentes de los Estados Unidos se negaría a registrar como marca de fábrica un término geográfico, e igualmente hubiese rehusado registrar un término como "Vichy." Sin embargo, las cortes darán protección contra una competencia ilegal al dueño de un producto que para identificarlo usa como nombre comercial (*trade name*) un término geográfico. En ese caso las cortes dicen que la palabra ha adquirido un significado secundario. Más adelante nos extenderemos sobre estas consideraciones.

Las Cortes Federales impedirán infracciones de las llamadas estrictamente marcas de fábrica, pero no darán protección contra competencia ilegal en el comercio, a menos que tales cortes adquieran jurisdicción por haber diversidad de ciudadanía.

La demanda radicada ante la Corte de Distrito de los Estados Unidos para Puerto Rico ha sido copiada en los autos del presente caso. Esta demuestra que la demandante registró una marca de fábrica en la Oficina de Patentes de los Estados Unidos, la que consistía de varios diseños y principalmente de un dibujo de un panorama, aunque incluyendo las palabras "Alcoholado Porto Rico" como parte de la descripción de todo el rótulo. La marca de fábrica fué registrada más bien sobre toda la descripción contenida en el rótulo o sobre parte del mismo, que sobre las palabras "Alcoholado Porto Rico," las que por sí solas no eran susceptibles de ser registradas en la Oficina de Patentes. La

teoría principal del litigio ante la Corte Federal era que el demandado había infringido la marca de fábrica. Esto más bien perjudica que favorece la causa del demandado de que de los autos aparece que la Corte Federal dictó un auto de *injunction* contra el demandado sobre ciertos extremos. Una lectura de la demanda y de la opinión del Juez Sr. Wells nos convence de que la Corte Federal adquirió y tuvo jurisdicción solamente por el fundamento de la supuesta infracción de una marca de fábrica en su sentido técnico. Se dictó una orden de *injunction* contra el demandado y éste posteriormente modificó el rótulo que usaba. Luego, cuando la demandante trató de obtener nuevos *injunctions* o aun un procedimiento de desacato, la Corte de Distrito de los Estados Unidos resolvió, en efecto, que el demandado había modificado suficientemente su marca de fábrica, y que no había habido otra infracción ni violación de *injunction* alguno. El litigio fué entablado y sostenido sobre la teoría de que se había infringido una marca de fábrica. Aunque se habla de la competencia ilegal en el comercio, de estar envuelta esta cuestión, no forma parte de la verdadera controversia. La jurisdicción de la Corte Federal no dependía en absoluto de la diversidad de ciudadanía, a pesar de que tal diversidad fué mencionada.

Aparentemente la Corte Federal no concedió indemnización alguna por concepto de daños y perjuicios, y el *injunction* fué expedido únicamente con respecto a la infracción de aquella parte inscribible del rótulo o diseño de la demandante. Hasta qué punto la demandante podría obtener un *injunction* contra el demandado para impedir el uso de las palabras "Porto Rico" o "Puerto Rico" en la venta de alcoholado. fué una cuestión que no estuvo realmente ante la Corte Federal, a pesar de que se ordenó entre otras cosas que el demandado cambiara en el rótulo que usaba el sitio de las palabras "Puerto Rico." Bajo estas circunstancias resolvemos que las dos causas de acción eran distintas; que el

litigio nunca adquirió una forma tal en la Corte Federal que impidiera a la demandante de solicitar un remedio por la competencia ilegal, que es el objeto del pleito que tenemos ante nuestra consideración.

Sujetos a la posibilidad de ser corregidos durante la vista final, los hechos principales alegados en la demanda quedaron establecidos, a saber:

Que allá por el año 1923, la demandante comenzó a fabricar y vender en esta Isla un alcoholado o *bay rum* con el nombre de "Alcoholado Porto Rico" impreso o exhibido en el rótulo que se adhería a las botellas en que se envasaba el producto, el que se fabricaba conforme a una receta perteneciente a la demandante; y que el alcoholado de la demandante es preparado y fabricado por la Eneglotaria Medicine Co. en la ciudad de Nueva York.

Que en aquel entonces (1923) el producto era desconocido en Puerto Rico, y la apelante inició una campaña para abrir y asegurar el mercado aquí, continuando dicha campaña hasta que se radicó este pleito; y como resultado de la misma, la demandante obtuvo grandes ventas.

Que el producto era conocido por el público como "Porto Rico" o "Alcoholado Porto Rico."

Que si bien el demandado trató de usar o vender su alcoholado marca "Gloria de Puerto Rico" en fecha anterior, sin embargo, no entró activamente en el mercado hasta alrededor del mes de octubre de 1925; que el alcoholado del demandado no se fabrica en Puerto Rico, sino que es preparado o fabricado por la Fratello Chemical Co., en la ciudad de Cleveland, Ohio.

Que el envase usado por el demandado para la venta de su producto es substancialmente del mismo tamaño y forma que los del envase utilizado por la demandante; que no se puede hacer una distinción entre el color del líquido contenido en las botellas, a menos que se haga un examen muy minucioso, colocando las botellas una al lado de la otra, pero

que aun así, hay que fijarse con un poco de detenimiento para poder notar la diferencia; que las botellas son tapadas casi exactamente en la misma forma, con una substancia plástica amarilla que se puede desprender o rasgar fácilmente; que las palabras "Porto Rico" aparecen en el rótulo del alcoholado del demandado con una relación prominente a la palabra "Alcoholado"; que la única diferencia existente entre los dos rótulos con respecto a las palabras "Porto Rico", "Puerto Rico", o "Alcoholado", es que la demandante ha colocado las palabras "Alcoholado Porto Rico" en la parte inferior del rótulo, mientras que el demandado ha colocado las palabras "Gloria de Puerto Rico" en la parte superior, y las repite en el centro del mismo debajo del sol naciente, seguidas en ambos casos por la palabra "Alcoholado"; que el colorido general de ambos rótulos es lo suficientemente parecido para engañar a una persona que no tenga experiencia con cualquiera de los dos frascos, o que no los tenga juntos uno al lado del otro, a pesar de que ambos diseños son enteramente distintos y de que existe marcada diferencia entre los colores; que si una persona que usara el "Alcoholado Porto Rico" se lo mostrara casualmente a alguien y se lo recomendara, la persona a quien se le hizo la recomendación fácilmente podría ser engañada al solicitar "Alcoholado Porto Rico"; que en el rótulo original usado por el demandado antes de los procedimientos habidos en la Corte Federal se usaban las palabras "Puerto Rico" un poco más abajo, y que el demandado se vió obligado a dejar de usar tales palabras en el sitio que había elegido.

Como una inferencia adicional de hecho, aunque corriendo el riesgo de que incurramos en repeticiones, estamos convencidos de que el producto del demandado con su envase y rótulo, si bien podría distinguirse al ser colocado junto al rótulo usado por la demandante, no es lo suficientemente distinto para impedir que el público consumidor fuera engañado y creyera que lo que compraba era el producto de la deman-

dante, cuando en realidad lo que adquiría era el producto del demandado. Desde luego que una persona que conociera muy bien una u otra marca no sería engañada.

Además, estamos convencidos por la prueba de la demandante, por los procedimientos en la Corte Federal, por los procedimientos en la Secretaría Ejecutiva de Puerto Rico, y significativamente también por la declaración y la conducta del demandado en la silla testifical, que el demandado se propuso deliberadamente imitar el producto de la demandante. Los procedimientos habidos en la Corte ·Federal demuestran que el rótulo original del demandado era entonces mucho más parecido al usado por la demandante, y de ahí que tuvieran lugar en dicha corte los procedimientos de *injunction* y de desacato. Esos procedimientos en la Corte Federal son prueba robusta de la intención del demandado de imitar el producto de la demandante. No importa que el demandado entrara en esta competencia por haber sido o no 'aconsejado que tenía derecho a hacerlo así. El letrado que representa actualmente al demandado y apelado, según él mismo indicó, no lo representó en las primeras etapas de la competencia.

No obstante, estamos convencidos de que el abogado está errado en un número de cuestiones relativas a lo que constituye competencia ilegal en el comercio. Igualmente está equivocado cuando dice que la frase "competencia ilegal" fué usada primeramente ante esta corte. Esas palabras fueron claramente mencionadas por el abogado de la apelante en uno o más de sus informes ante la corte de distrito. Desde luego que si los hechos revelaran un caso de competencia ilegal, el dejar de caracterizar las actividades del demandado como tales no puede afectar la decisión del caso.

Antes de entrar a discutir los aspectos legales del caso, es conveniente decir que la demandante inscribió su marca de fábrica en la oficina de Patentes de los Estados Unidos, sin especial mención del uso de las palabras "Alcoholado Porto Rico." Según hemos indicado, estas palabras no eran

propiamente inscribibles, y como una marca de fábrica estricta no podían recibir protección alguna ni la recibieron en la Corte Federal. Sin embargo, en realidad de verdad,—y este hecho es importante—el producto de la demandante era conocido con el nombre de "Alcoholado Porto Rico"; por tanto, la inscripción en la Oficina de Patentes, o los procedimientos en la Corte Federal o en la Secretaría Ejecutiva no tienen gran importancia respecto a si estas palabras llegaron a ser o no el nombre comercial de la demandante. Según sostuvo el letrado de ésta durante el juicio por varias ocasiones, su cliente descansaba en sus derechos "consuetudinarios" o de costumbre.

El apelado está en verdad en lo cierto al sostener que en general nadie puede obtener un derecho absolutamente exclusivo de apropiarse de un nombre descriptivo o geográfico para sus artículos. *Canal Co.* v. *Clark,* 13 Wall. 311, es uno de los casos principales sobre esta cuestión. Según dice el sumario, nadie puede aplicar el nombre de un distrito o de un país a un artículo de comercio bien conocido, y obtener tal derecho exclusivo a esa designación para impedir que otras personas que residan en el distrito o que trafiquen en artículos similares procedentes de tal distrito usen exactamente la misma designación.

En el caso de *Buzby* v. *Davis,* 150 Fed. Rep. 275, 10 A. & E. Cas. 68, la corte resolvió, citando nuevamente del sumario, lo siguiente:

"Admitiendo, sin resolverlo, que la palabra 'Keystone' es un término geográfico y que no es susceptible de ser monopolizado como marca de fábrica, sin embargo, su uso por parte de un fabricante en su nombre comercial o en sus productos, para ofrecerlos como los de otro fabricante, puede constituir competencia ilegal y dar derecho a este último a que se le conceda un *injunction* y a ser indemnizado por daños y perjuicios."

La corte cita numerosos casos en que se dice que los términos geográficos no pueden ser monopolizados como marcas de fábrica, y luego dice prácticamente lo que hemos

copiado del sumario, citando además un gran número de casos. En una nota sobre dicho caso el comentarista dice lo siguiente:

"Sin embargo, la regla anterior está sujeta a la excepción de que cuando un nombre geográfico ha sido usado en relación con cierta clase de negocios en forma tal que indique no sólo el lugar en que se fabrica el producto, sino también el nombre del fabricante o productor y la excelencia del mismo, entonces el nombre ha adquirido una significación secundaria tal que da derecho a la persona que lo ha usado a ser protegida en el uso de la palabra mediante el recurso de *injunction* para impedir que otros utilicen ese nombre en forma tal que induzca a error a los compradores respecto al verdadero origen o calidad de la cosa producida o vendida, o que permita que esas personas ofrezcan sus productos como los de la persona que anteriormente usaba el nombre."

Esa nota es muy minuciosa y abarca toda clase de casos, muchos de ellos aplicables a los hechos del caso que tenemos ante nuestra consideración.

En otra parte del texto se dice:

"Cuando un término geográfico ha llegado a ser el nombre corriente (*short name*) por el cual el público generalmente conoce los productos de determinada persona, procede un *injunction* para impedir el uso de ese término por otra persona en forma tal que se engañe al público."

En el texto se cita también el caso de *Siegert* v. *Gandolfi* 149 Fed. 100, en que la corte resolvió que si el término geográfico se había convertido en una designación secundaria para el producto de determinado fabricante, ese término tenía tanto derecho a que se le diera protección como cualquier nombre arbitrario o de fantasía que se pudiera haber escogido.

También se citaron casos en que se resolvió que cuando el artículo a que se aplica un término geográfico, es el producto de un lugar determinado, ese término no puede ser usado como nombre comercial por una persona con exclusión de aquellas que son dueñas de productos similares en el

mismo lugar, pero que procede un *injunction* para impedir que aún una persona residente use un nombre geográfico cuando el mismo es posteriormente usado por otra persona en tal forma que le permita engañar al público y ofrecer su producto como el de la primera persona que usó el nombre.

El resultado final de toda la jurisprudencia, es, podría decirse, que el demandado sólo puede usar un término como "Porto Rico" en relación con su alcoholado, si al presentar su producto al público, hace constar con absoluta claridad que el mismo no es el del demandante. Cuando una persona fabrica un producto especial como el "Alcoholado Porto Rico", cualquier fabricante posterior de alcoholado está en el deber ineludible de impedir que su producto se confunda con el del primer fabricante.

Uno de los casos más interesantes demostrativos del límite hasta dónde llegan los tribunales es quizás el de *Singer Sewing Machine Co.* La patente de la máquina de coser había expirado desde hacía mucho tiempo. Uno de los principios de la ley de patentes es que cuando el derecho al monopolio ha expirado, el público tiene un derecho absoluto a fabricar y vender el artículo que anteriormente estaba patentizado. No obstante, la Singer Sewing Machine Co. continuó fabricando máquinas de coser, y la corte resolvió que el público tenía derecho a vender máquinas de coser "Singer" y de designarlas con ese nombre, pero que, sin embargo, los fabricantes de dicha máquina tenían ciertos derechos, y que una persona que vendiera una máquina de coser marca "Singer" debía distinguirla de la máquina "Singer" original y hacer saber al público que el sitio en que se fabricaba era distinto, o que los fabricantes eran otros, y ello claramente. *Singer Sewing Machine Co.* v. *June Manufacturing Co.*, 163 U. S. 169. El decreto de la corte fué en el sentido de que el demandado se abstuviera de usar la palabra "Singer" o cualquier palabra equivalente en anuncios relativos a máquinas de coser, a menos que hiciera constar claramente y sin lugar a dudas que las má-

quinas eran fabricadas por el demandado, distinguiéndolas de las máquinas de coser fabricadas por la Singer Sewing Machine Co., y, además, que se abstuviera de usar la palabra "Singer" en cualquier cliché o diseño, a menos que claramente y sin lugar a dudas especificara que tales máquinas eran fabricadas por el demandado, etc.

*French Republic* v. *Saratoga Vichy Spring Co.*, 191 U. S. 427 es otro caso en que se demostró cómo los términos geográficos pueden ser protegidos. La corte dijo:

"Es cierto que el nombre es geográfico; pero los nombres geográficos con frecuencia adquieren un significado secundario que indica no solamente el sitio en que se fabrica o produce el artículo, sino también el nombre del fabricante o productor y la excelencia de la cosa fabricada o producida, lo que permite que el dueño haga uso del derecho exclusivo de tal nombre contra cualquier otra persona que no trafique dentro de los mismos límites geográficos; y también aun contra esas mismas personas si el nombre es usado fraudulentamente con el fin de engañar a los compradores respecto al verdadero origen del artículo, o si se ofrecen los productos de una persona como los de otra."

La apelante también citó otro número de casos que tienen relación con la cuestión envuelta, pero hemos creído conveniente citar principalmente las decisiones de la Corte Suprema de los Estados Unidos. Otras citas que tratan sobre esta materia pueden hallarse en las notas sobre los casos de *Dyment* v. *Lewis* 26 L.R.A. (N. S.) 73–77, y *W. R. Lynn Shoe Co.* v. *Auburn-Lynn Shoe Co.*, 4 L.R.A. (N. S.) 960.

Las anteriores consideraciones abarcan las cuestiones tratadas en el alegato del apelado, quien no nos ha citado caso alguno, excepto uno de California, *Burke* v. *Cassin,* 45 Cal. 467. Según sugiere ese caso, la situación legal tal vez sería algo distinta si las palabras "Porto Rico" hubiesen sido identificadas con la producción, fabricación o venta de alcoholado, pero aún tal situación no podría ayudar al demandado en el presente caso en vista de los hechos que ya hemos reseñado. Podríamos decir incidentalmente que si bien respetamos la jurisprudencia de California, en una

cuestión de esta clase otros precedentes son igualmente aplicables. En el caso de *Burke* v. *Cassin,* si bien las palabras "Schiedam Schnapps" no podían estar sujetas a apropiación exclusiva fué expedido un *injunction* por razones similares a las que hemos indicado.

Entre otras cosas, el demandado alega que no se pueden apropiar los términos geográficos, y dice que si fuera así no podría comprender cómo el "New York Tribune", el "New York Times" y el "New York Herald" podrían publicarse al mismo tiempo. Desde luego que en la ciudad de Nueva York cualquier persona tiene derecho a usar ese nombre para un periódico. Los periódicos no tratan de ofrecer fraudulentamente sus ediciones como pertenecientes a otras empresas; por el contrario, hacen todo esfuerzo posible para distinguirlas. Si un periódico comenzara a ofrecer sus ediciones como pertenecientes a otro, las cortes inmediatamente impartirían protección al invocarse su jurisdicción. En la nota sobre el caso de *Buzby* v. *Davis,* 10 A. & E. Ann. Cas., *supra,* pueden hallarse casos en que las palabras "St. Louis," "Southwestern," "Chicago," "Minneapolis," "California," y "New York" han sido protegidas.

Las anteriores consideraciones cubren el otro señalamiento de error presentado por la apelante.

Nos sentimos obligados, por tanto, a resolver que el demandado es culpable de competencia ilegal en el comercio, y que la demandante tiene derecho a un *injunction* preliminar más o menos sujeto a la discreción de la corte, en la forma de la orden de entredicho originalmente dictada en este caso. *Debe revocarse la resolución apelada, librarse un auto de injunction preliminar* contra el demandado mediante la prestación de una fianza adecuada que deberá ser fijada por la corte inferior, y devolverse el caso para ulteriores procedimientos no incompatibles con esta opinión.

El Juez Asociado Sr. Texidor no intervino.