JERÓNIMO FONALLEDAS, demandante y apelante, *v.* LAS MONJAS DAIRY CORPORATION, y JACINTO A. PALACIOS, demandados y apelados.

Núm. 8568.—*Sometido:* Junio 3, 1943. *Resuelto:* Febrero 10, 1944.

*Hugh R. Francis*, abogado del apelante; *Cayetano Coll Cuchí*, abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Esta apelación fué interpuesta contra la sentencia que anuló un auto preliminar de *injunction* y denegó la expedición del que con carácter de perpetuo solicitó el demandante en protección de la marca de fábrica que describiremos en el curso de esta opinión.

Conforme resulta de la prueba, el demandante, Jerónimo Fonalledas, es dueño de cierta finca rústica segregada de otra conocida por "Finca Las Monjas". Como las demás que han sido segregadas de dicha finca principal, la del demandante también es conocida por "Finca Las Monjas". En

ella, y desde el año 1919, tiene establecida una lechería. Allá para el año 1924, el demandante empezó a usar, y continuó usando en los vehículos que transportan la leche y en las botellas en que la envasa, un dibujo que consiste en la representación de los bustos de tres monjas encerradas en un círculo. Debajo de las monjas existe una inscripción que dice: "Leche Jersey—Grado A", y alrededor del círculo, escrito con letras blancas sobre un fondo amarillo, esta otra: "Vaquería Las Tres Monjitas—Tel. 155 Hato Rey—Lic. No. 8, Río Piedras, P. R." Ese emblema fué registrado por el demandante como marca de fábrica en la Secretaría Ejecutiva de Puerto Rico el 10 de mayo de 1935.

De otro lado, el demandado Jacinto A. Palacios desde el año 1931 viene dedicándose a la compraventa de leche. Empezó ese negocio con un contrato que celebró con Ramón Nevárez, dueño de otra finca segregada también de la misma finca principal de donde se derivó la del demandante y que como la de éste es conocida por "Finca Las Monjas". Fué con motivo de ese contrato para vender la leche que producía la lechería de Nevárez que el demandado, a los lados del carrito de caballo que usaba al principio en su negocio para transportar la leche, empezó a usar una inscripción que decía: "Las Monjas, de J. A. Palacios". Cuando hubo progresado algo más su negocio, sustituyó el carro de caballo por un vehículo de motor, usando siempre la misma inscripción a los lados del mismo. Posteriormente se organizó una corporación doméstica, la otra demandada, con el nombre "Las Monjas Dairy Inc.", para dedicarse al mismo negocio, y de la cual es presidente J. A. Palacios. Tanto Palacios como su codemandada la mencionada corporación, han venido usando en los lados de los vehículos destinados por ellos al transporte de leche, un dibujo que representa en el centro una vaca y dos monjas de pie a uno y otro lado del animal. La monja a la derecha de la vaca tiene en cada mano un canasto con botellas de leche. La otra tiene en su mano un balde. Sobre

la vaca aparece la siguiente inscripción: "Las Monjas Dairy Corp.", y en la parte inferior del dibujo, entre la vaca y las monjas, otra que dice: "Grade A Milk—Pasteurized".

El dibujo que usa el demandado Palacios en sus vehículos lleva una inscripción que dice: "Lechería Las Monjas", y en parte sobre y en parte debajo de la vaca, otra inscripción que dice: "Leche fresca y pura de vaca"; y debajo: "J. A. Palacios". Las monjas que aparecen en las marcas del demandante y en las del demandado visten hábitos similares.

Debemos hacer claro que los vehículos de transportación de leche del demandante están pintados de crema y de verde los de los demandados, de suerte que el dibujo de las marcas de fábrica respectivas está pintado sobre fondos de colores marcadamente diferentes. Es de mayor importancia todavía, como acertadamente apunta el juez inferior, el hecho de que mientras las botellas en que se vende la leche de la vaquería del demandante contienen el círculo con las tres monjas, etc., las que usan los demandados no contienen dibujo alguno, y sólo en sus tapas llevan esta inscripción: "Las Monjas Dairy Corp—Pasteurized Milk—Santa Ana 12—Tel 133." Es en los vehículos, repetimos, donde los demandados exhiben el dibujo de que se queja el demandante.

En primero de julio de 1937 y 21 de julio de 1939, el demandado Palacios solicitó la inscripción de la marca de fábrica usada por él y en una y otra ocasión se le denegó el registro por entender el Secretario Ejecutivo que dicha marca es tan parecida a la de Fonalledas que podría confundir al público consumidor.

Alegó el demandante en su solicitud de injunction que la actuación de los demandados a que acabamos de referirnos constituye una competencia desleal que perjudica la venta de leche producida por la vaquería Las Tres Monjitas, que constituye también una infracción a la marca de fábrica del demandante y que tiende a confundir o engañar al consumidor en cuanto a la verdadera procedencia del producto; que de

continuar los demandados realizando los actos descritos, se causarían daños irreparables al demandante, y por último que el demandante carece de otro remedio en el curso ordinario de la ley.

La cuestión a determinar es si no obstante existir en las dos marcas ciertos detalles parecidos, de un examen superficial del conjunto de una y otra aparecen tan esencialmente diferentes que una persona de ordinaria inteligencia que no sea distraída, que desee comprar uno de los dos productos no sería inducida al error de comprar el otro. No tiene importancia el hecho de que en casos aislados un comprador sea tan descuidado que no advierta la diferencia, pues como dijera el Juez Brewer en el caso de *P. Lorillard Co.* v. *Peper* (C.C.A.) 86 F. 956, 960, "esas cosas suceden en el curso ordinario de los negocios, no importa cuán grandes puedan ser las diferencias; y el hecho de que ocurran si bien no debe ser totalmente descartado, no debe pesar más que la evidencia derivada de una inspección personal de los paquetes y las etiquetas."

En el presente caso el demandante no interesa que se prohiba a los demandados el uso de los nombres "Las Monjas" o "Las Monjas Dairy Inc." Su objeción va dirigida, como dice el juez inferior, a que se use en relación con su negocio la representación gráfica de dos monjas o de monja alguna. Así pues, limitaremos nuestra atención a los dibujos de una y otra marca. Descartadas dichas palabras, la dueña de casa que desea comprar una botella de leche de la vaquería del demandante y la recibe, notará inmediatamente el dibujo de Las Tres Monjitas en la botella. En cambio, si al pedir una botella de leche de Las Tres Monjitas le sirven una de las que venden los demandados, sin el más mínimo esfuerzo notará que la botella no contiene dibujo alguno y advertirá inmediatamente que el que le han servido no es el producto que ella ha ordenado. Es de tenerse en cuenta que no se trata de un artículo como la goma de mascar, por ejemplo, que es

comprada de prisa en pequeños paquetes y consumida antes de descubrirse la decepción, como se dice en *American Auto Asso.* v. *American Auto Owners' Asso.* (Cal., 1932) 83 A.L.R. 699, 705. La leche no es un producto que se consume tan aprisa. Generalmente se recibe una vez al día en la casa del consumidor y es guardada en neveras para conservarla. De suerte que hay amplia oportunidad para que una persona de ordinaria inteligencia y que no sea peculiarmente distraída pueda advertir la decepción. Eliminada la posibilidad de error por lo que a las botellas respecta, consideraremos ahora si los dibujos que aparecen en los costados de los vehículos de los demandados son capaces de causarlo.

Ya hemos dicho que los vehículos que transportan la leche de Las Tres Monjitas están pintados de crema, mientras que los de la demandada están pintados de verde. Y como se dice en la cuidadosa opinión de la corte inferior, el consumidor que compra leche no presta gran atención al vehículo que la transporta, vehículo que por lo general no tiene oportunidad de ver, y si a eso se agrega que las botellas usadas por los demandados no ofrecen oportunidad alguna de decepción, no vemos cómo pueda surgir la competencia desleal de que se queja el demandante. Pero prescindiendo, a los efectos de la discusión, de esa circunstancia señalada por la corte inferior, y concretándonos ahora a los dos dibujos en cuestión, no vemos cómo una persona ordinariamente inteligente, que no sea distraída, pueda ser inducida a confusión. La posición de las monjas es distinta: las de la marca del demandante aparecen de busto, encerradas en un círculo; en las de los demandados no aparece tal círculo, las monjas están de pie, de cuerpo entero, y llevan las canastas para las botellas y el balde a que hemos hecho referencia, mientras que las del demandante nada tienen en sus manos; y por último entre las dos monjas de la marca de los demandados aparece una vaca que no está en la del demandante. Podría decirse que lo único que tienen en común es que en una y otra aparecen figuras de monjas. Pero

como se dijo en *American Auto Asso.* v. *American Auto Owners' Asso.,* supra, a las páginas 708, 709:

"Muchos otros casos podrían citarse al efecto de que no es bastante para dar derecho a un remedio, el hecho de que algunos compradores pudieran aceptar como el producto del demandante, otro de un competidor que lleva fijadas en el envase a algunas figuras o palabras en común con la marca del demandante, si las diferencias en otros respectos son tales que inmediatamente pueden distinguirse dichos productos por un comprador que sea un razonable observador; ni da lugar a una causa de acción el que la decepción se debiese a parecido en detalles sobre los cuales el demandante no tuviese ningún derecho exclusivo. *Wunderlich* v. *Cash* (C.C.A.) 33 F. (2d) 118."

El caso de *Eneglotaria Medicine Co.* v. *Sosa López,* 38 D.P.R. 604, y el de *Jackson Brewing Co.* v. *José B. López, Sucrs.,* 51 D.P.R. 719, invocados por el demandante, son fácilmente distinguibles. En el primero de ellos la semejanza entre el producto de la demandante y el del demandado era tan marcada que colocando las botellas de dichos productos una al lado de la otra, había que fijarse con detenimiento para poder notar la diferencia entre uno y otro, pues el envase usado por el demandado era sustancialmente del mismo tamaño y forma que el usado por el demandante; las botellas eran tapadas casi exactamente en la misma forma con una sustancia plástica amarilla que se podía desprender o rasgar fácilmente, y existían además otros puntos de semejanza entre dichos productos, por lo cual este tribunal, al resolver el caso a favor de la demandante, se expresó en los siguientes términos:

"Como una inferencia adicional de hecho, aunque corriendo el riesgo de que incurramos en repeticiones, estamos convencidos de que el producto del demandado con su envase y rótulo, si bien podría distinguirse al ser colocado junto al rótulo usado por la demandante, no es lo suficientemente distinto para impedir que el público consumidor fuera engañado y creyera que lo que compraba era el producto de la demandante, cuando en realidad lo que adquiría era el producto del demandado. Desde luego que una persona que conociera muy bien una u otra marca no sería engañada."

Y en el de *Jackson Brewing Co.* v. *José B. López, Sucrs.,* supra, la controversia estuvo limitada al uso por parte de la demandada de la palabra ''Jax'' en la frase ''Jax Brewing Co.'', en violación de la marca de fábrica ''Jax'' registrada por la Jackson Brewing Co., de Louisiana. Se resolvió que la palabra ''Jax'' era un mote y en su consecuencia no estaba excluída de ser objeto de una marca de fábrica válida, y como tal tenía derecho a protección.

Que el demandante no ha sufrido daño en su negocio por la alegada competencia desleal y violación de su marca de fábrica, lo demuestra su propia declaración al efecto de que su vaquería produce unos dos mil litros de leche diariamente; que los estaba vendiendo todos y que si más produjese más leche podría vender. (T. de E., págs. 16 y 17.)

El hecho de que el Secretario Ejecutivo en dos distintas ocasiones rechazase la solicitud de registro de la marca de los demandados por ser a su juicio tan parecida a la del demandante que podría inducir a confusión o error, no obliga a los tribunales de justicia a adoptar el mismo criterio.

*Procede, por lo expuesto, confirmar la sentencia apelada.*