GARRIGA TRADING COMPANY, INC., demandante y recurrente, *v.* CENTURY PACKING CORP., demandada y recurrida y SECRETARIO DE ESTADO DE PUERTO RICO.

*Número:* R-77-412    *Resuelto:* 12 de septiembre de 1978

520

*Plinio Pérez Marrero, Reichard & Colberg,* abogados de la recurrente; *Héctor A. Colón Cruz, Procurador General,* y *Federico Cedó Alzamora, Procurador General Auxiliar,* abogados del Secretario de Estado; *Rivera & Ortiz,* abogados de la recurrida.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

En virtud de convenio otorgado el 19 de agosto de 1965, la recurrida Century Packing Corporation ("Century") adquirió del señor Julio Garriga, Jr., por la suma de $100,000.00 los derechos a la marca de fábrica "Carmela", registro Núm. 11,359, Departamento de Estado de Puerto Rico. Tal registro amparaba salchichas, jamones, embutidos y aceites comestibles. Century utilizó la marca ininterrumpidamente hasta el inicio de esta controversia, pero nunca la empleó para la pro-

ducción de aceites comestibles. Las ventas de Century de productos "Carmela" para 1976 ascendían a la suma aproximada de $4,365,000.00. Su inversión en la publicidad de la marca en los tres años anteriores al pleito alcanzó a alrededor de $550,000.00.

El 3 de enero de 1976 la recurrente, Garriga Trading Company, Inc. ("Garriga"), comenzó a utilizar la marca "Carmela" con respecto a aceites vegetales. El vicepresidente de Garriga es el propio don Julio Garriga, Jr., cedente original de la marca. Diez días más tarde Garriga solicitó el registro de la marca "Carmela" para su aceite comestible. El Secretario de Estado denegó la solicitud por confligir con el registro de la marca Century. Garriga requirió entonces la cancelación de la marca "Carmela" de Century en lo que atañía a aceites comestibles por el fundamento de abandono y desuso. Solicitó a la vez la reconsideración de la denegatoria de inscripción a su nombre.

El Secretario de Estado canceló por desuso la marca "Carmela" de Century en cuanto a aceites comestibles, pero se negó a inscribir la marca a nombre de Garriga por estimar, entre otros fundamentos, que se infringiría el Art. 4(f) de la Ley de Marcas de Fábrica, Ley Núm. 66 de 28 de julio de 1923, 10 L.P.R.A. sec. 194(f). Garriga solicitó infructuosamente la reconsideración de esta segunda denegatoria y luego acudió en alzada ante el Tribunal Superior, que resolvió no ha lugar al recurso. Ante nos Garriga solicita que se ordene al Secretario de Estado de Puerto Rico a registrar la marca "Carmela" a su nombre para la venta de aceites comestibles.

La primera cuestión que estos hechos plantean es el efecto contractual de la transferencia a Century por el señor Garriga de la marca "Carmela" para los fines mencionados. Está establecido en la jurisdicción federal que, en ausencia de estipulación en contrario, "La cesión válida de una marca de fábrica, sin embargo, indica la intención del cedente de abandonar su uso. El cedente pierde todo derecho a la inscripción

de la marca a su nombre . . . . El cedente de su derecho a una marca . . . no puede luego limitar su propia concesión y privar de lo cedido al cesionario o intentar establecer un uso adverso." 3 Callmann, *The Law of Unfair Competition, Trademarks and Monopolies*, 3ª ed., 487, 489. No podemos pronunciarnos sobre este particular ya que ignoramos los términos y condiciones del contrato de cesión ni se ha desfilado prueba sobre su validez o nulidad o argumentado en momento alguno la cuestión ante el Departamento de Estado, el Tribunal Superior o este foro.(¹) Señalamos la existencia del problema por su importancia en casos de esta naturaleza.

Debemos enfrentarnos en consecuencia al *issue* de si el Secretario de Estado de Puerto Rico tiene la obligación en ley de inscribir la marca "Carmela" a nombre de Garriga. La disposición legal a interpretarse es básicamente el Art. 4(f) de la Ley Núm. 66 de 28 de julio de 1923, 10 L.P.R.A. sec. 194(f), la que en parte provee:

". . . Tampoco se registrará una marca de fábrica que sea idéntica a otra marca ya inscrita o conocida que pertenezca a otro y se use en artículos de las mismas propiedades descriptivas, o que tanto se asemeje a la marca de fábrica perteneciente a otro, que sea muy probable que ocasione confusión o equivocación en la mente del público, o dé lugar a engaño de los compradores . . . ."

Esta disposición arranca de la antigua ley federal de marcas de fábrica de 20 de febrero de 1905, ch. 592, 33 Stat. at L. 724, 728, hoy derogada. La interpretación de su texto por los tribunales y comentaristas norteamericanos tiene valor persuasivo en esta jurisdicción. *Oliveros* v. *Abréu*, 101 D.P.R. 209, 226 (1973), n. 4. Este litigio no requiere la dilu-

---

(¹) La cesión parcial de una marca, como ocurrió en este caso, presenta problemas de gran complejidad. 1 Nims, *The Law of Unfair Competition and Trade-Marks*, 4ª ed., 1947, sec. 17. Es indispensable contar con un récord completo para formar juicio sobre ellos. El récord carece también de la información necesaria sobre la relación entre el señor Garriga y Garriga Trading Company, Inc. Tan solo consta que el primero es funcionario de la segunda.

cidación de las serias interrogantes que suscita la adopción en Puerto Rico, del modo tan singular que se hizo, de este venerable estatuto. (²)

▮ El primer argumento de Garriga es que, de cancelarse el registro de una marca, un tercero avisado puede apoderarse sin más de la misma y exigir el registro a su nombre. No es tal la doctrina. El abandono de una marca de fábrica no obliga al Estado a inscribirla a nombre de otro hasta que su significado especial para el público se haya perdido y esfumado el peligro de confusión. Gilson, *Trademark Protection and Practice*, New York, 1974, sec. 3.06; 3 Callmann, *op. cit.*, 519, 533; 1 Nims, *op. cit.*, 630; Derenberg, *op. cit.*; *Interstate Distilleries v. Sherwood D.&D. Co.*, 195 A. 387, 390–391 (Maryland 1937). Se estima, además, que puede descontinuarse el uso de una marca para ciertos productos y man-

---

(²) Por exigirlo nuestra función normativa, debemos hacer varias observaciones generales sobre el origen y estado del derecho sobre la propiedad industrial en el país. Antes de la adquisición de Puerto Rico por Estados Unidos, el derecho de propiedad industrial se regía por varios decretos reales, el Art. 287 y otros del Código Penal de 1879 y el Art. 1802 de nuestro Código Civil. Véanse: Mascareñas, *Los Delitos contra la Propiedad Industrial*, Barcelona, 1960, págs. 13–17; 1 Garrigues, *Curso de Derecho Mercantil*, 7ª ed., 1976, capítulo VI. El gobierno militar expidió algunas órdenes sobre la materia (véanse las O.G. 116 de 12 de agosto de 1899 y O.G. 102 de 30 de abril de 1900) y, finalmente, el Código Político de 1902, especialmente en sus Arts. 213 a 222, estableció un sistema de inscripción de marcas análogo al actual. El Art. 215 del Código Político contenía lenguaje prácticamente idéntico al antes citado de nuestra ley de 1923, todavía vigente.

El Art. 215 del Código Político de 1902 se fundó a su vez en el Art. 3 de la ley federal de marcas de fábrica de 3 de marzo de 1881, 21 Stat. at L. 502, 503, precursora de la ley federal de 1905. Ocurrió algo en extremo curioso, sin embargo, al aprobarse, con extrema rapidez, el Código Político. El Art. 10 de la ley federal de 1881 ordenaba que nada en dicha ley anulaba o reducía los remedios que en derecho o equidad amparasen a una parte agraviada por el uso ilegal de una marca de fábrica. Esto significa que la protección de las marcas de fábrica en Estados Unidos derivaba— y todavía deriva—de dos fuentes: el derecho común y el derecho estatutario. Derenberg, W. J., *Trademark Protection and Unfair Trading*, New York, 1936, págs. 14 y 15. Puede que una marca no esté protegida por la ley pero sí por el derecho común. Derenberg, *op. cit.*, 281; 2 Nims, *op. cit.*, 732. La acción privada de competencia desleal, por ejemplo, se afinca básica-

tenerse en cuanto a otros sin que ello entrañe que se ha abandonado el uso de la marca. 3 Callmann, *op. cit.*, 525; *Robinson* v. *Plastic Research and Development Corp.*, 264 F.Supp. 852, 863 (W.D. Ark. 1967).

■ Debe recordarse, además, que vastas porciones del derecho a la propiedad industrial están investidas de hondo interés público. No se trata de adjudicar una simple disputa entre entidades privadas. Se trata especialmente también de proteger al público consumidor. Ni la propia Century, por convenio privado con Garriga para permitirle el uso de la marca, podría en toda circunstancia obligar al Secretario de Estado a inscribirla a nombre de Garriga. Como expresa el Art. 4(f) citado de nuestra ley, hay que convencer al Secretario de que no habrá probabilidad de confusión en la mente del público. Véanse: *Waltham Watch Co.* v. *F.T.C.*, 318 F.2d 28 (7th Cir. 1962), *cert.* den. 375 U.S. 944 (1963); *Waltham*

mente en Estados Unidos en principios de derecho común. Gilson, *Trademark Protection and Practice*, New York, 1974, sec. 5.05. La situación jurídica estadounidense es en este sentido totalmente distinta a la inglesa. En Inglaterra el derecho común ha cesado de tener ingerencia alguna en este campo, rigiéndose la materia exclusivamente por ley del reino. *Trade Marks Act 1938*, 1 & 2 Geo. 6, c. 22, 37 Halsbury's *Statutes of England*, 3rd ed., pág. 887 y ss.

Lo interesante es que el Código Político de Puerto Rico de 1902 omitió el mencionado Art. 10, base del sistema dual de Estados Unidos, a la par que derogó buena parte del antiguo derecho español. Esto creó una situación singular. En Puerto Rico no rige el derecho común, *Pueblo* v. *Tribunal Superior*, 81 D.P.R. 763, 770 (1960), excepto en la medida que así se disponga por estatuto en consonancia con nuestra Constitución. La extraña acción de 1902 se repitió en 1923, omitiéndose del estatuto actual el Art. 23 de la ley federal de 1905, equivalente al Núm. 10 de la de 1881. ¿Cuál es la base en Puerto Rico, por tanto, de la doctrina del significado secundario y otras derivadas del derecho común? En lo que toca al ancho campo de la competencia desleal, ¿se rige éste exclusivamente por el Art. 1802 de nuestro Código Civil u otros textos? Compárese: 1 Garrigues, *op. cit.*, 243-244; Puig Peña, *Compendio de Derecho Civil*, vol. II, 3ª ed., 1976, pág. 338 y ss.

Estas dificultades, aunadas al hecho de que la legislación sobre la propiedad industrial en Estados Unidos y otros países ha superado el viejo estatuto de 1905, revela la urgencia de reexaminar legislativamente este campo.

*Precision Instrument Co., Inc.* v. *F.T.C.*, 327 F.2d 427 (7th Cir. 1964).

■ En segundo término, el peso de demostrar que una marca ha perdido su carácter propio descansa en el que pretende apropiársela por tal motivo. 2 Nims, *op. cit.*, sec. 336. En *Cooperativa Cafeteros* v. *Colón Colón*, 91 D.P.R. 372, 389 (1964), dijimos: ". . . cuando uno usa la marca de otro, tiene el peso de justificar su uso y de demostrar que ha ejercido su derecho con razonable deferencia hacia los derechos del dueño de la marca." Century en este caso probó su uso ininterrumpido de la marca "Carmela" por largos años hasta que surgió este litigio; el pago de una suma considerable por concepto de plusvalía de la marca; su alto volumen de ventas; su considerable inversión en la publicidad de su marca. Garriga se limitó a argumentar su derecho a apoderarse de la marca por desuso en cuanto a un artículo—argumento insuficiente en derecho, como hemos visto—y a señalar que existen siete registros en vigor de la marca "Carmela", cinco a nombre de Century y dos a favor de otras dos entidades, adquiridos estos últimos con referencia a productos distintos a los aquí envueltos por cesión también del señor Julio Garriga, Jr. Garriga no aportó prueba para el récord, sin embargo, demostrativa de la naturaleza y lugar del uso de estas marcas y del hecho de la pérdida de singularidad por causa de las propias cesiones efectuadas por el señor Garriga. Century presentó prueba suficiente al menos para demostrar *prima facie* la probabilidad de confusión. Garriga estaba obligado a rebatir esta presunción. *J. Beléndez Solá, Inc.* v. *Rivera*, 102 D.P.R. 276, 278 (1974). No hay base en el récord elevado a nuestra consideración para intervenir con la decisión del Secretario de Estado y obligarle a inscribir la marca a nombre de Garriga.

■ Alega Garriga por último que el aceite comestible no tiene las mismas propiedades descriptivas que el producto vendido por Century, por lo que no existe posibilidad alguna

de confusión. Importa en este sentido que nos pronunciemos sobre el criterio que impone el Art. 4(f) de nuestra ley para determinar la registrabilidad de una marca. Originalmente, si dos clases de productos diferían en sus características distintivas no eran considerados artículos de las mismas propiedades descriptivas, aun cuando pudiese provocarse confusión en el consumidor por otros motivos. Véase: *California Packing Corporation* v. *Tillman*, 40 F.2d 108, 110 (Ct. of Customs and Patent Appeals, 1930). Este enfoque fue abandonado posteriormente para darle preeminencia al criterio rector de la posibilidad de confusión. 3 Callmann, *op. cit.*, sec. 82.2(c), págs. 801–803. Los productos no tienen que competir entre sí; basta con la probabilidad de engaño al consumidor. Gilson, *Trademark Protection and Practice*, 1974, sec. 5.02; 1 Nims, *op. cit.*, 671. La confusión a evitar no es esencialmente la relacionada con los productos sino la relativa al origen de éstos. Nims, *loc. cit.*[3] Del texto del propio Art. 4(f) de nuestra ley, 10 L.P.R.A. sec. 194(f), se desprende que el Secretario de Estado no sólo se abstendrá de inscribir una marca "que se use en artículos de las mismas propiedades descriptivas" sino también en el caso en que "tanto se asemeje a la marca de fábrica perteneciente a otro, que sea muy probable que ocasione confusión o equivocación en la mente del público, o dé lugar a engaño de los compradores . . . ."[4]

*Por las consideraciones expuestas se confirma la sentencia recurrida.*

Los Jueces Asociados Señores Dávila, Martín y Negrón García concurren con el resultado.

---

[3] Queda modificada cualquier expresión en contrario sobre estos extremos vertida en *Eneglotaria Medicine Co.* v. *Sosa López*, 38 D.P.R. 604, 613 (1928) y *Fonalledas* v. *Las Monjas Dairy Corp.*, 63 D.P.R. 87, 90 (1944).

[4] La legislación federal vigente, la Ley Lanham de 5 de julio de 1946, 60 Stat. 443, 15 U.S.C.A. sec. 1051 y ss., abandonó ya la referencia a "artículos de las mismas propiedades descriptivas."