# 98 DTA 228

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL I DE SAN JUAN
### PANEL IV

JACKSON INTERNATIONAL TRADING COMPANY
Ex parte
Recurrente

Núm. KLRA-97-00779

San Juan, Puerto Rico, a 25 de agosto de 1998

Panel integrado por su Presidenta, la Juez López Vilanova,
el Juez Cordero y la Juez Feliciano Acevedo

López Vilanova, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

En el presente caso examinamos la denegatoria del Departamento de Estado de Puerto Rico a una solicitud de registro de determinada marca de bebidas, fundamentada en que existe otra marca en el mismo mercado común, cuya configuración gráfica y fonética es similar.

Evaluadas la comparecencia de todas las partes, resolvemos confirmar el dictamen recurrido. Veamos los hechos.

El 23 de junio de 1995, Jackson International Trading Company, *("Jackson")* presentó, ante el Departamento de Estado, una solicitud de registro para la marca de fábrica. *"BOSS!"*, bajo la Clase Internacional 32, correspondiente a bebidas ligeras. Dicha marca de fábrica no se ha usado en el mercado local.

Luego de que se publicara la existencia de la solicitud en un periódico local, el 17 de mayo de 1996, Bass Public Limited Company *("Bass")* presentó un escrito titulado *"Opposition and/on Request for Cancellation of 'BOSS!" Trademark Registration Application #32"*. La opositora *"Bass"*, es titular del certificado #32,430 para la clasificación internacional de bebidas ligeras y está en uso en el mercado local desde el 28 de septiembre de 1992.

Las partes presentaron sus respectivas posiciones. La controversia a resolver, conforme surge de la Resolución recurrida, es la siguiente: *"¿Constituye una diferencia "sustancial, en la determinación de probabilidad de confusión, el que una marca se distinga sólo por la sustitución de una vocal o letra?"*

El Departamento de Estado determinó, en síntesis, que la única diferencia entre ambas marcas lo constituye una vocal y un signo de exclamación. *"Lo que está en controversia en estos casos no es la pronunciación correcta de una palabra sino la pronunciación usual al público"*. Denegó la inscripción solicitada, toda vez que ambas marcas han de compartir un mercado común y que su configuración gráfica y fonética es muy similar. (Resolución pág. 3). Solicitada la reconsideración del dictamen la misma se denegó.

*"Jackson"* plantea, en síntesis, que el Departamento de Estado erró al denegar la inscripción de la marca *"BOSS!"* por un supuesto parecido con la marca registrada *"Bass"*.

A su juicio ambas marcas son fonética y gramaticalmente distintas, haciendo imposible cualquier probabilidad de confusión en el público.

Examinemos sus alegaciones, a la luz de la ley en controversia.

## II

La Ley Núm. 63 de 14 de agosto de 1991, 10 L.P.R.A. sec. 171 y ss., estableció un régimen jurídico para la protección de marcas en nuestra jurisdicción. El Artículo 3 de la citada ley, establece que el derecho de propiedad sobre una marca se adquiere por el registro válidamente efectuado de conformidad con las disposiciones de la ley. 10 L.P.R.A., sec. 171..

El Artículo 2 (a) de la ley, define marca como *"todo signo o medio que sirva para distinguir en el mercado productos o servicios de una persona, de productos o servicios de otra persona. El término incluye cualquier "marca de fábrica, servicio y colectiva".* El inciso (b) del Artículo 2 dispone que *"marca de fábrica"* será *"todo signo o medio que sirva para distinguir los productos de una persona de los de otra persona".* 10 L.P.R.A. sec. 171 (a) y (b).

De otra parte, el Artículo 5 (a) dispone cuáles marcas no son registrables, 10 L.P.R.A. sec. 171 c (a). Los incisos 7 y 8 del referido artículo disponen lo siguiente:

*"No se registrará ninguna marca que consista en:*

*1....*

*2....*

*3.-...*

*4....*

*5....*

*6....*

*7. Una marca que sea idéntica a otra marca ya inscrita o conocida, que pertenezca a otro y que se use en productos o servicios de las mismas propiedades descriptivas o que tanto se asemeje a la marca perteneciente a otro, que sea muy probable que ocasione confusión o equivocación en la mente del público o de lugar a engaño de los compradores. Una marca que sea idéntica o similar a un nombre comercial inscrito o solicitado su registro en el Departamento de Estado, que sea muy probable que ocasione confusión o equivocación en la mente del público."* (Cabe señalar que la Ley de Marcas Federal posee una disposición similar a la aquí transcrita, 15 U.S.C.A. sec. 1052 (d). [1]

El Tribunal Supremo de Puerto Rico se ha expresado sobre el tema de marcas de frábrica en varias ocasiones. En el caso de *Posadas de Puerto Rico Associates Inc. v. Sands Hotel & Casino, ___ D.P.R. ___* (1992), **92 J.T.S. 89,** 9672, al examinar una controversia sobre marcas de servicios estableció que:

*"Una persona o corporación tiene un derecho propietario sobre una marca de fábrica o servicio cuando dicha marca es usada en conexión con su producto o servicio para indicar su origen y distinguirlo de otros. (citas omitidas). El derecho propietario de una marca es obtenido por su uso y no por su inscripción (citas omitidas). Este derecho propietario, el cual permite el uso exclusivo de una marca, pertenece al que primero utilice la marca dentro de la jurisdicción que ofrece la protección jurídica. (cita omitida) Sin embargo, este derecho es uno limitado. El primer usuario de una marca no puede excluir el uso posterior de dicha marca por parte de otros usuarios en áreas donde actualmente no hace negocios o donde no es probable lo realice en un futuro. (citas omitidas). Tampoco puede reclamar este derecho si ha dejado de utilizar, o ha abandonado la marca. (citas omitidas) Por último, el dueño de una marca no puede impedir que otros utilicen una marca similar si ésta última no crea una probabilidad de confusión.*

*Existe una violación o infracción al derecho propietario sobre una marca de fábrica, cuando la marca utilizada posteriormente por un competidor u otro comerciante crea una probabilidad de confusión al consumidor con respecto de la marca protegida. Posadas de Puerto Rico Associates, Inc. v. Sands Hotel & Casino, supra, a la pág. 9674. El criterio o "test" a seguir para determinar que*

*existe confusión entre dos marcas es el siguiente: "Cuando un comprador prudente y razonable puede comprar un producto bajo la creencia de que está comprando otro producto".*

No existe una norma precisa para poder determinar la existencia de probabilidad de confusión entre dos productos o servicios. Se trata de un concepto relativo que se determina según las circunstancias de cada caso en particular, basándose la determinación que sobre ello se haga en un balance de los factores o criterios desarrollados jurisprudencialmente. Entre los criterios señalados se encuentran: 1) la similaridad entre las marcas, 2) la similaridad entre los productos, 3) la fuerza de la marca o su distintivo, 4) la intención del segundo usuario al adoptar las marcas, y, 5) evidencia de confusión actual o real. En el caso ante nuestra consideración resultan de particular importancia los primeros dos criterios.

Es esencial determinar si las marcas *"BOSS!"* y *"Bass"* pueden ocasionar una probabilidad de confusión en el público consumidor.

La contención de *"Jackson"* es que las marcas difieren en su pronunciación, puesto que una enfatiza la vocal *"o"* y la otra enfatiza la vocal *"a"*. A su juicio la diferencia en pronunciación es clara. Ante dicho planteamiento, el Departamento de Estado en su Resolución expresó lo siguiente:

*"En el caso de autos la única diferencia entre ambas marcas lo constituye una vocal y un signo de exclamación. Las cortes han rechazado consistentemente esta única distinción."*

*"Es absolutamente imposible para un demandado controlar la pronunciación que se le da a una palabra en el comercio.*

*El estudio lexicológico de las palabras no es determinante al evaluar la probabilidad de confusión marcaria. Lo que está en controversia en estos casos no es la pronunciación correcta de una palabra, sino la pronunciación usual por el público.*

*Debido a que ambas marcas han de compartir un mercado común y que su configuración gráfica y fonética es muy similar, este foro entiende que la marca "BOSS!" no es susceptible de inscripción registral".*

Concurrimos con su criterio.

Para que se establezca una probabilidad de confusión, debe existir una similitud de las marcas, aunque dicho factor, por sí sólo, no ocasione dicha confusión. El grado de similitud entre las marcas se determina comparando ambas marcas en su totalidad. *Cooperativa v. Colón Colón,* 91 D.P.R. 312 (1964). En este caso la única diferencia visible es una vocal y un signo de exclamación.

En cuanto a la similitud entre los productos, mientras más cercana sea, más probabilidad existe de que se cree confusión. También, hay que tener presente la proximidad de los mercados y territorio a que van dirigidos. Tanto *"Bass"* como *"BOSS!"* se encuentran dirigidos a un mismo mercado, el de bebidas ligeras, además, se ubican en el mismo territorio. Más aún, las marcas en controversia poseen un alto grado de similitud en pronunciación y apariencia, en adición al mercado común.

Con respecto a la similaridad en sonido nuestro más alto foro ha expresado que: *"La similaridad en sonido puede de por sí concebiblemente sostener la imputación de la infracción de una marca".* (citas omitidas)

La Ley de Marcas que rige en Puerto Rico, tiene sus raíces en la Ley de Marcas Federal de 1905, ya derogada, la cual no regulaba el aspecto sustantivo de las marcas, pues dejaba el mismo a los estados. Por principios de hermenéutica, es forzoso concluir que el legislador ha admitido en Puerto Rico el sistema marcario norteamericano. Por tal motivo, recurrimos a la jurisprudencia norteamericana y a sus tratadistas, puesto que tienen valor persuasivo en nuestra jurisdicción.

Dicho principio lo expresó el Tribunal Supremo en el caso de *Sucesión Chavier v. Sucesión Giraldés,* 15 D.P.R. 154, al expresar que: *"Es un principio de derecho bien conocido y con frecuencia*

*formulado por este Tribunal que cuando nuestra legislatura adopta una ley de otro estado y la copia sustancialmente a nuestras leyes, ha de presumirse que la legislatura se propuso también adoptar la interpretación que a tal ley le hayan dado los tribunales de última instancia del estado del cual dicha ley fue tomada."* Colón R. Jr.; *Las marcas de fábrica en los derechos norteamericano y puertorriqueño,* 8 Rev. de Derecho Puertorriqueño 38, 40 (1968). Véase también: *Colgate Palmolive v. Mistolín,* 117 D.P.R. 313, 323 (1986); *Garriga Trad. Co. Inc. v. Century Pack Corp.,* 107 D.P.R. 519, 522 (1978).

En Callmann, *Unfair Competition Trademarks and Monopolies,* 4ta. Ed., Callaghan, Illinois, sec. 20.13 (1981); citado con aprobación por nuestro Tribunal Supremo en el caso de *Posadas de Puerto Rico v. Sand's Hotel & Casino, supra,* pág. 9671, el tratadista expresa con relación a la similaridad entre marcas de fábrica, lo siguiente:

*"Word marks may appeal to the eye, the ear or the mind; thus, there may be similarities of appearance, sound or meaning between them. If such similarity creates a probability of confusion, infringement can be found. Similarity in itself, however, is not the test. Whether the similarity is likely to provoke confusion is the crucial question."* Callmann, *supra,* pág. 85.

Por otro lado, cualquier aspecto de una marca, que puede incluir su sonido, debe ser considerado en el análisis sobre la probabilidad de confusión. *The Forum Corporation of North v. The Forum LTD.,* 903 F.2d 434 (7th Cir. 1990); *Henri's Food Products Company Inc. v. Kraft Inc.,* 717 F.2d i 352 (7th Cir. 1983).

En *Weiss Associates Inc. v. HRL Associates, Inc.,* 14 U.S.P.Q. 2d 1840; 902 F.2d 1546, 1547-1549 (Fed. Cir. 1990), luego de narrados los hechos particulares del mismo, el tribunal concluyó que:

*"It is especially hard to distinguish between TMS and TMM when the marks only differ by the last letter. Because it is hard to distinguish between these letters, the mark TMM is confusing with TMS."*

La diferencia de una sola letra no es suficiente para evitar la probabilidad de confusión entre las marcas en disputa.

En el citado caso se establecieron trece (13) factores como guías para examinar la probabilidad de confusión. ■ El tribunal enfatizó que los primeros tres factores resultaban relevantes al caso. Con respecto a esto se dijo: *"The marks sound alike and look alike. The products are very similar and directly compete. In looking at the factors, there is no doubt there is ample evidence to support likelihood of confusion". Weiss Associates Inc. v. HRL Associates, supra,* a la pág. 1549.

En el caso ante nuestra consideración, encontramos las mismas circunstancias.

De otra parte, en *ESSO Inc. v. Standard Oil Co.,* 98 F.2d 1 (5th Cir. 1938), se produjo un conflicto en cuanto a lo similar de los sonidos en la pronunciación de las marcas en disputa. El Tribunal Federal expresó lo siguiente:

*"It is urged that the word "ESSO" is not similar to the trademarks "Standard Oil", "S.O.," and "SOCO" as to be confusing. It is the accepted rule that similarity of sound, as well as appearance, of the words or letters may constitute infringement. (citing cases). "ESSO" when pronounced, is indistinguishable from "S.O.".* Véase a *Radio Station KTLN Inc. v. Irva M. Steffen,* 346 P.2d 307 (1959).

Conforme a lo anterior, la preocupación de confusión no estriba únicamente en la similaridad de la pronunciación, sino también en la similaridad de apariencia entre las letras y las palabras.

Con relación al planteamiento de *"Jackson",* de que en Puerto Rico la pronunciación de *"BOSS!"* y *"Bass"* es completamente distinta, coincidimos con lo expuesto por el Departamento de Estado, en cuanto a que es imposible controlar la pronunciación que se le da a una palabra en el comercio.

Sobre este particular Callman expone que:

*"Moreover, the fact that a confusingly similar pronunciation is incorrect is no excuse, even though correct pronunciation would avoid the similarity in sound. In fact. "there is no such thing as a correct pronunciation of a trademark. It is pronounced in different ways, by different people" and "it is absolutely impossible for the defendant to control the pronunciation which the trade would give to the word." This is especially true with respect to words in foreign languages; technical terms not often encountered by the general public; and names, for, as one court observed, "the pronunciation of names of persons always, and of corporations frequently, is an arbitrary matter ungoverned by any fixed rules of lexicographers"* Callman, supra, a las págs.85-86.

*"A word may have one appeal to the ear, while its written or printed form may determine a quite different appeal to the eye. Similarity in sound is purely acoustical, and therefore is unrelated to the visual impact. An obvious similarity between vowels may be enough to negate any dissimilarity between the other components of the words at issue."* Callman, supra, págs. 85-86.

Si sólo existe una diferencia en la pronunciación de los nombres de las marcas, es muy probable que ocurra la confusión en el mercado. Véase, *G.D. Searle & Co. v. Chas. Pfizer & Co.*, 265 F.2d 385 (7th Cir. 1959).

Sin lugar a dudas, hay que tener presentes la totalidad de los factores mencionados, para poder determinar si existe probabilidad de confusión entre dos marcas. En primer lugar, y lo que refiere al caso ante nuestra consideración, aun cuando al pronunciar las marcas en español, exista una diferencia fonética, esto de por sí sólo no excluye la probabilidad de confusión. Es necesario sopesar otros factores. En segundo lugar, la similaridad visual en los nombres de las marcas es más que evidente, puesto que sólo se diferencia por una vocal y un signo de exclamación. Por último, ambas compañías distribuyen productos similares (sino iguales), además, de que van dirigidas al mismo mercado dentro de nuestra jurisdicción.

A la luz de los criterios esbozados, concurrimos con el Departamento de Estado en que la inscripción de la marca *"BOSS!"* ocasionaría una probabilidad de confusión en el consumidor, en relación con la marca *"Bass"*, por lo que esta última merece protección.

## III
Es norma jurídica reiterada que al revisar decisiones de agencias administrativas, sus conclusiones e interpretaciones merecen gran consideración y deferencia por parte del foro judicial. La revisión debe estar limitada a determinar si la agencia actuó arbitraria o ilegalmente o en forma tan irrazonable que su actuación constituya un abuso de discreción. *Murphy Bernabé v. Tribunal Superior*, 103 D.P.R. 692, pág. 699 (1975).

En ausencia de una actuación arbitraria o caprichosa por parte del Departamento de Estado al realizar su determinación, no debemos intervenir con la misma.

## IV
Por los fundamentos expuestos anteriormente, confirmamos la Resolución recurrida.

Notifíquese.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 98 DTA 228**

**1.** Cabe señalar que la Ley de Marcas Federal posee una disposición similar a la aquí transcrita, 15 U.S.C.A. sec. 1052 d.

**2.** *"(1) The similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression.*

*(2) The similarity or dissimilarity and nature of the goods or services as described in an application or registration or in*

*connection with which a prior mark is in use.*

*(3) The similarity or dissimilarity of established, likely-to-continue trade channels.*

*(4) The conditions under which buyers to whom sales are made, i.e. "impulsive" Careful, sophisticated purchasing.*

*(5) The fame of the prior mark (sales, advertising, length of use).*

*(6) The number and nature of similar marks in use on similar goods.*

*(7) The nature and extent of any actual confusion.*

*(8) The length of time during and conditions under which there has been concurrent use without evidence of actual confusion.*

*(9) The variety of goods on which a mark is or is not used (house mark, family mark, product mark).)*

*(10) The market interface between applicant and the owner of a prior mark:*

*(a) a mere consent to register or use.*

*(b) agreement provisions designed to preclude confusion, i.e. limitations on continued use of the marks by each party.*

*(c) assignment of mark, application, registration and good will of the related business.*

*(d) laches and estoppel attributable to owner of prior mark and indicative of lack of confusion.*

*(11) The extent to which applicant has a right to exclude others from use of its mark on its goods."*

*(12) The extent of potential confusión, i.e., whether de minimis is substantial.*

*(13) Any other established fact probative of the effect of use". Dupont, 476 F.2d at 1361, 177 USPQ at 567.*